546 So.2d 244 (1989)
Robert Y. HENDERSON, Plaintiff-Appellee,
v.
D.R. GUILLORY, et al., Defendants-Appellants.
No. 20593-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
Rehearing Denied July 13, 1989.
*245 William T. Guste, Jr., Atty. Gen., Houston T. Penn, Asst. Atty. Gen., Baton Rouge, for defendants-appellants.
Culpepper, Teat & Avery by Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, D.R. Guillory, appeals a trial court judgment ordering him to pay the plaintiff, Robert Y. Henderson, $20,000 in damages for defamation of character. For the following reasons, we reverse.

FACTS
The plaintiff, Robert Y. Henderson, was formerly the assistant warden at Wade Correctional Center. The plaintiff filed suit for defamation against the defendant, D.P. Guillory, formerly the warden at Wade, and several ladies employed in the administrative office of that facility, Lynn Hutson, Judy Houck, Cindy Fowler and Jerri Hamilton. The plaintiff contended *246 that the ladies filed an unfounded disciplinary complaint against him accusing him of failing to take action against one of the officers at the facility for a rule violation. The plaintiff contends that after he and Guillory had investigated the initial incident, Guillory instructed him to take no action on the matter and that Guillory breached a duty to the plaintiff by failing to quash the complaint as soon as it was filed by the administrative employees.
The events serving as the basis for this suit began in the early morning hours of June 10, 1985. At 5:30 a.m. on that date, Wade employees were in the roll call room of the facility preparing to begin their daily activities.
Officer John Hopkins made disparaging and crude remarks concerning the relationship between Major Forrest Richard and the ladies employed in the administrative office at Wade. The remarks were to the effect that Major Richard was spending too much time in the administrative office in order to be near certain ladies who worked there. Major Richard's sister, Linda Marie Moore, who was also employed at Wade, was present in the roll call room and heard Officer Hopkins' remarks. When the shift supervisor, Capt. R.N. Compton, failed to take any action against Officer Hopkins, Ms. Moore asked to be excused from the room.
Ms. Moore later located Major Richard and informed him of the comments which had been made about him. At 8:15 a.m. on June 10, 1985, Major Richard went to the plaintiff's office, accompanied by Officer Hopkins and Capt. Compton. A heated confrontation ensued in the plaintiff's office. Warden Guillory intervened and ordered everyone into his office. While in Warden Guillory's office, Officer Hopkins apologized to Major Richard. At that time, Warden Guillory indicated that the matter was concluded and that he wanted to hear no more about the incident. Guillory also instructed Henderson to inquire as to whether Richard wanted to file a complaint, known as a DR-1, against Hopkins. Henderson made the inquiry as directed, and Major Richard stated he was not going to file a complaint.
Within the Department of Corrections, any employee who observes a violation of the Department's rules by another employee may file a DR-1 complaint. One of the rules of the Department of Corrections prohibits negative comments by employees against each other. Upon the filing of a DR-1, the accused employee's supervisor is to conduct a first level hearing.[1] This first level hearing is informal and consists of a discussion between the supervisor and the employee against whom the complaint has been filed. The employee may have one other person present at the hearing.
Later, the ladies employed in the administrative office heard about Hopkins' comments and became upset because they felt that the comments impugned their character. They perceived that no official action had been taken against Hopkins. Therefore, on June 18, 1985, without discussing the matter with Warden Guillory or voicing their concerns to him, they filed a DR-1 against Hopkins. They also filed a DR-1 against the plaintiff, claiming he failed to take action on a reported violation as he was required to do by the rules of the Department of Corrections. The DR-1 against the plaintiff was filed with the defendant, Warden Guillory, who was plaintiff's supervisor. Guillory was out of town at the time the complaint was filed.
*247 After reviewing the DR-1, Warden Guillory contacted the plaintiff in order to schedule a hearing on the complaint. The Warden had not discussed the complaint with the ladies before contacting plaintiff. Plaintiff stated that he wanted to have his attorney present when any proceedings were conducted. Thereafter, the plaintiff appeared with his attorney and, at the request of the attorney, Warden Guillory recused himself from the hearing. Another employee of the Department of Corrections heard the complaint and dismissed it as being unfounded.
Following the dismissal of the complaint, the plaintiff filed suit against the defendants for defamation. The defendants were sued as individuals. Neither the State nor the Department of Corrections were named as defendants. The plaintiff contended that the mere filing of a DR-1 went into his personnel file and could adversely affect his career with the Department of Corrections. He also contended that the incident adversely affected his authority and relationships with other prison personnel.
Trial was held on June 14, 1987. The trial court dismissed the suit as to all defendants except Guillory. The court found that Guillory was responsible for telling the plaintiff not to take any action at the time of the initial incident. The court then reasoned that Guillory had an obligation to inform the complainants that it was Guillory himself who had previously instructed the plaintiff to take no further action and that the matter was closed. His failure to inform the complainants of what had transpired evidenced a malicious intent to cause the plaintiff embarrassment and mental anguish and to damage his reputation within the Department of Corrections. The court found that Guillory's actions were "designedly malevolent" and ordered him to pay the plaintiff $20,000 in damages.
Guillory's motion for new trial was denied. Guillory then appealed the trial court judgment.
On appeal, the defendant asserts, in essence, that the trial court committed manifest error in finding that he damaged the plaintiff's reputation or caused him mental anguish. The defendant also contends that as a public official, being sued for activities arising from his employment, the trial court erred in requiring him to post bond or pay costs accrued in the trial court before going forward with this appeal. The defendant also assigned numerous other errors which are unnecessary for our consideration in light of our reversal of the trial court judgment as being manifestly erroneous.

DAMAGE TO REPUTATION
The plaintiff sued the defendants on the theory that under LSA-C.C. Art. 2315, their actions in filing a complaint against him and in processing that complaint to a first level hearing damaged his professional reputation. The plaintiff argues in terms of defamation, a common law action which has found its way into Louisiana law under our general tort principles relative to "fault".
A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community. Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir.1986), writ denied 489 So.2d 246 (La.1986).
Words are defamatory when they have a tendency to deprive a person of the benefits of public confidence or injure him in his occupation or have a natural tendency to injure the person's reputation. Elmer v. Coplin, supra.
Language is defamatory when it tends to expose a person to contempt, hatred, ridicule, or obloquy or causes him to be shunned or avoided, or has a tendency to deprive him of the benefits of the public confidence or injure him in his occupation. Garrett v. Kneass, 482 So.2d 876 (La.App. 2d Cir.1986), writ denied 484 So.2d 671 (La. 1986).
The essential elements of an action in defamation are defamatory words; publication, that is, communication to some person other than the one defamed; falsity; malice, actual or implied; and resulting injury. *248 Cangelosi v. Schweggman Brothers Giant Super Markets, 390 So.2d 196 (La. 1980); Wiggins v. Creary, 475 So.2d 780 (La.App. 1st Cir.1985), writ denied 478 So.2d 910 (La.1985); Elmer v. Coplin, supra; Jenkins v. Ouachita Parish School Board, 459 So.2d 143 (La.App. 2d Cir.1984), writ denied 462 So.2d 652 (La.1985).
When an injury results from defamation, the culpable party must respond in damages. Compensable injury resulting from defamation includes both pecuniary and nonpecuniary damages. Our law is well established to the effect that even in the absence of proof of pecuniary loss, injury to reputation may result from the nature of the defamatory words alone. Rennier v. State Through the Department of Public Safety, 428 So.2d 1261 (La.App. 3rd Cir.1983). Defamation damages have been extended to include damages based upon elements other than injury to reputation, such as personal humiliation, embarrassment, and mental anguish. Rennier v. State Through the Department of Public Safety, supra.
However, there are defenses to a charge of defamation. Truth is an absolute defense. Elmer v. Coplin, supra. Another defense is justification or privilege. Privileged communications are divided into two general classes, absolute or unqualified privilege and conditional or qualified privilege. Elmer v. Coplin, supra; McGowen v. Prentice, 341 So.2d 55 (La.App. 3rd Cir.1976). See also DefamationConditional Privilege in Louisiana, 6 La.L.Rev. 281 (1945); Defamation: A Compendium, 28 La.L.Rev. 82 (1967).
An absolute privilege exists in certain situations where the public interest in unhampered free speech is so strong that the courts feel that no liability should be imposed under any circumstances. This privilege is limited to judges, legislators and certain executives acting in their respective official capacities. DefamationConditional Privilege in Louisiana, supra.
A conditional privilege is applicable if the communication is made in good faith, on any subject matter in which the person communicating has an interest or in reference to which he has a duty, to a person having a corresponding interest or duty. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir.1975).
This privilege arises from the social necessity of permitting free and unrestricted communication concerning a matter in which the parties have a duty or interest, without inhibiting free communication in such instances by fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. Carter v. Catfish Cabin, supra.
Internal communications by employees to superiors regarding work related matters, particularly the job performance of any employee, is entitled to a qualified privilege when made in good faith to the proper parties. Ward v. Sears, Roebuck & Company, 339 So.2d 1255 (La.App. 1st Cir. 1976). See also Carter v. Catfish Cabin, supra.
In the present case, the trial court was correct in dismissing the plaintiff's case against the administrative employees who filed the complaint against the plaintiff. This ruling by the trial court is not disputed. The record shows that the communication was made in good faith to the proper parties and was entitled to a qualified privilege. In fact, the allegation against the plaintiff, that he did not act upon a subordinate's violation of the internal rules of the Department of Corrections, was true. However, the plaintiff did have a defense to the complaint, in that he was told not to act by his superior, the defendant.
As to the claim against the defendant, it cannot be said that he defamed the plaintiff in the traditional sense. The defendant did not utter or write any defamatory statements against the plaintiff but rather received the DR-1 from other employees.
The plaintiff's argument, and the import of the trial court's judgment, is that the defendant breached a duty which was owed to the plaintiff under LSA-C.C. Art. *249 2315 by failing to quash the complaint. The plaintiff argues that by including the complaint in his personnel file and proceeding to a first level hearing, the defendant damaged his reputation. The trial court found that the plaintiff acted out of a "malevolent" attitude toward the plaintiff in an effort to damage the plaintiff's reputation. However, the record does not support the plaintiff's argument or the trial court's conclusion.
It is true that the defendant knew that he had instructed the plaintiff not to take further action on the comments made by Officer Hopkins. However, the record does not show that the defendant owed a duty to the plaintiff to quash the complaint filed by the administrative employees as soon as it was filed.
The Department of Correction Procedures for Employee Disciplinary Action 1(a) provides that:
Any employee observing a violation of an employee rule shall complete Form DR-1. Normally, if more than one person observes the violation, the employee's supervisor or the highest ranking employee present should complete the form.
Under the Employee Rules, Rule 12(e) dealing with malfeasance, specifies that:
Negative comments about other employees, their personal characteristics and/or job performance, about the administration or its policies, or about management decisions shall not be made in the presence of inmates, fellow or subordinate employees or visitors while on duty.
Rule 13(e), dealing with aggravated malfeasance, includes, in the definition of that behavior:
Failure by a supervisor to whom a violation has been reported to take appropriate and proper action.
The Department of Corrections Procedures for disciplinary action provide that after receiving a DR-1, the accused employee's supervisor is to schedule a first level hearing at which the employee is to be given a copy of the complaint and an opportunity to discuss the incident with his supervisor.
By scheduling such a hearing, the defendant acted in conformity with the procedures set forth by the Department of Corrections. Failure to do otherwise might have also resulted in an accusation against the defendant that he violated Employee Rule 13(e), supra. Here, Guillory was presented with a DR-1 alleging that a supervisory employee had failed to take action against a subordinate for a rule violation and that the initial incident had not been handled according to departmental procedures. Under those circumstances, Guillory certainly did not err in following department procedures in handling the complaint so that all actions would be properly documented. The defendant owed no duty to the plaintiff to quash the complaint or to circumvent the first level hearing. Therefore, the defendant breached no duty to the plaintiff by the mere scheduling of such a hearing.
Also, the record fails to support the trial court finding that the defendant acted in bad faith in an attempt to damage the plaintiff's reputation. Although the defendant had not been completely satisfied with the plaintiff's job performance, the record simply does not show that the actions taken by the defendant were fueled by a desire to harm the plaintiff.
Further, the plaintiff made no showing that the failure to dismiss the DR-1 before a first level hearing caused him damage. The complaint was dismissed as unfounded at the first level hearing conducted by another officer of the Department of Corrections after the recusal of the defendant. No disciplinary action was taken against the plaintiff.
The plaintiff contends that the very fact that the DR-1 was filed and placed in his personnel record had an adverse affect on his reputation and his career. He claims other employees would not associate with him and that he was ridiculed by inmates. However, these claims are supported only by the plaintiff's own self-serving testimony. Under the facts of this case, we cannot say that a complaint, dismissed as unfounded, had an adverse effect on plaintiff's *250 career. Although the plaintiff was transferred to another prison facility sometime after this incident, the record does not show that the transfer was due to the filing of the DR-1, nor that the transfer was a negative event in his career within the Department of Corrections.
We conclude that the plaintiff has failed to show any improper action on the part of the defendant. Nor has the plaintiff proved that he was damaged in any way by the defendant's actions. The trial court finding that the defendant acted in bad faith, and its judgment ordering the defendant to pay the plaintiff $20,000 in damages is unsupported by the evidence in the record. Because the trial court ruling is manifestly erroneous, it must be reversed. Canter v. Koehring, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979).

GOVERNMENTAL IMMUNITY
The defendant argued that regardless of whether he damaged the plaintiff, his actions were undertaken in good faith and that as a public official performing his duty under color of legal authority and in furtherance of a legitimate state interest, he was immune from a judgment for damages. Vincent v. State Through the Department of Corrections, 468 So.2d 1329 (La.App. 1st Cir.1985), writ denied 472 So.2d 34 (La.1985); State ex rel Jones v. Walls, 356 So.2d 75 (La.App. 1st Cir.1977). Because we find that the defendant did not act improperly and did not damage the plaintiff, we are not required to determine whether the defendant would be entitled to a good faith defense against this claim for damages.

COSTS
The defendant also argues the trial court erred in requiring him, a public official of the state, to post an appeal bond and pay costs before going forward with the present appeal.
Under the facts of this case, these issues are moot. All costs have been paid, a suspensive appeal bond was obtained, and the plaintiff's appeal was properly perfected to this court.[2]

CONCLUSION
For the above stated reasons, we reverse and set aside the trial court judgment ordering the defendant, D.R. Guillory, to pay $20,000 in damages to the plaintiff, Robert Y. Henderson. All costs in this court and the trial court are assessed to plaintiff.
REVERSED, at plaintiff's costs.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, LINDSAY, NORRIS and HIGHTOWER, JJ.
Rehearing denied.
NOTES
[1] The Department of Corrections Procedures for Disciplinary Actions provide the following procedure for a first level hearing:

The employee's supervisor will give the employee a copy of the report and discuss the incident with him. The employee may have one person with him at this meeting. The supervisor will give the employee and his representative an opportunity to present fully his side of the story.
If at the conclusion of the hearing, the supervisor decides to recommend disciplinary action, he will advise the employee orally of the proposed penalty and the reasons for selecting that penalty. The supervisor will then complete the report, date and sign it and give a copy to the employee and forward a copy to the Department Head for review.
If he decides that no violation occurred, he will advise the employee and forward the DR-1 to the Unit or Division Head for review.
[2] We note, however, that this suit was filed against the defendant as an individual. Therefore, the provisions of LSA-R.S. 13:5112(B), relieving the state and other public bodies from the payment of costs until the rendition of a final and definitive judgment, are not applicable to defendant. However, the trial court was in error in requiring the defendant to pay all trial court costs as a condition of granting an order of appeal. See Burks v. McKean, 544 So.2d 502 (La.App. 2nd Cir.1989). As to the requirement that the defendant post a suspensive appeal bond, he, as an individual, is not protected by the provisions of LSA-R.S. 13:4581, relieving the state and other public bodies from the necessity of posting appeal bonds. See Thomas v. Appalachian Insurance Company, 335 So.2d 789 (La. App. 1st Cir.1976).