821 So.2d 542 (2002)
Randy CONNOR, et al., Plaintiffs-Appellants
v.
Edward Bernard SCROGGS, et al., Defendants-Appellees.
Edward Bernard Scroggs, et ux, Plaintiffs-Appellees
v.
Randy Connor, et ux, Defendants-Appellants.
Randy Connor and Rachal Connor, Plaintiffs-Appellants
v.
Edward Bernard Scroggs, et al., Defendants-Appellees.
Edward Bernard Scroggs, et al., Plaintiffs-Appellees
v.
Randy Connor and Rachal Connor, Defendants-Appellants.
Nos. 35,521-CA, 35,522-CA, 36,109-CA, 36,110-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
Rehearing Denied August 8, 2002.
*545 Walter M. Caldwell, IV, West Monroe, Gregory G. Elias, Monroe, for Appellants, Randy Connor and Rachal Connor and Their Minor Child, C.C.
Ralph W. Kennedy, Alexandria, for Appellees, Edward Bernard Scroggs and Lori Denine Bemont Scroggs.
Cook, Yancey, King & Galloway, By: Lee H. Ayres, Scott L. Zimmer, Shreveport, for Appellee, Winn Parish School Board.
Before BROWN, KOSTELKA and DREW, JJ.
*546 KOSTELKA, J.
Randy and Rachel Connor (the "Connors") appeal two separate judgments of the Eighth Judicial District Court. The first appeal is of a summary judgment in favor of the Winn Parish School Board (the "School Board"). The second appeal is of a judgment following a trial of the Connors' claims against Eddie and Lori Scroggs (the "Scroggs") and the defamation claims of the Scroggs against the Connors. In that judgment, the Connors' claims were dismissed, judgment was entered in favor of the Scroggs and these appeals ensued. For the following reasons, we affirm both judgments of the trial court.

BACKGROUND FACTS
The parties to this case, the Connors and the Scroggs, lived approximately one mile apart in Winn Parish and had known each other for some time before the incidents giving rise to this litigation allegedly occurred.
In June, 1996, C.C., the minor child of the Connors, spent two nights at the home of the Scroggs. C.C., who was four years old at the time, was a friend of T.S., the daughter of Eddie Scroggs and stepdaughter of Lori Scroggs. The Connors allege that during this stay, C.C. was molested by the Scroggs.
The Connors had C.C. examined by a physician and although there were no physical signs of molestation, Rachel nonetheless determined that C.C. needed emotional counseling from a mental health provider. C.C. was evaluated by several psychologists following her physical examination. The Connors brought their suspicions to the attention of the Winn Parish Sheriff's Office and the Winn Parish District Attorney's Office; however, neither of the Scroggs was ever arrested nor were criminal charges ever brought.
In August, 1996, C.C. was a kindergarten student in Mrs. Scroggs' class at Winnfield Kindergarten School. The Connors allege that Mrs. Scroggs threatened C.C. at the school not to reveal the alleged molestation.
In addition to bringing their accusations to law enforcement, the Connors brought their allegations to the principal of Winnfield Kindergarten School and the School Board. School officials offered to move C.C. to another kindergarten class. The offer was accepted by the Connors, but before C.C. attended that new class, the Connors transferred her to another school in Grant Parish.

PROCEDURAL HISTORY
In December, 1996, the Connors filed suit against the Scroggs and the School Board. Subsequently, the Scroggs filed a defamation suit against the Connors and the two lawsuits were consolidated at the trial court. The suits were set for trial and the School Board filed a Motion for Summary Judgment.
After several continuances and the substitution of several attorneys representing the Connors, trial of the matter commenced on October 10, 2000; however, neither the Connors nor their attorney was present when the trial began that day. The trial resumed on December 8, 2000 with the Connors and their newly retained attorney present.
The School Board's Motion for Summary Judgment was also set to be heard on December 8th. On December 7th, the Connors filed their opposition and counter-affidavits to the School Board's Motion for Summary Judgment, and on that same day, the School Board filed a motion to strike the Connors' pre-trial inserts and affidavits. Though the Connors requested a continuance of the trial from that date, they agreed to argue the School Board's *547 Motion for Summary Judgment. The School Board's Motion for Summary Judgment was granted by the trial court and trial of the matter resumed after the Connors' request for a continuance was denied. When the trial could not be completed on December 8th, it was finally completed on May 17, 2001. Following trial, judgment was rendered rejecting the Connors' claims and awarding the Scroggs $35,000 each in their defamation suit against the Connors. This appeal ensued.[1]

DISCUSSION

Factual Findings of the Trial Court
On appeal the Connors raise various assignments of error which address the factual findings of the trial court, i.e., C.C.'s credibility and the finding that the Connors had defamed the Scroggs.
It is well settled that a district court's finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Leal v. Dubois, XXXX-XXXX (La.10/13/00), 769 So.2d 1182; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact-finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the district court which is in a unique position to see and hear the witnesses as they testify. In re: A.J.F., XXXX-XXXX (La.06/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Adkins v. Huckabay, 99-3605 (La.02/25/00), 755 So.2d 206.

C.C.'s Credibility
In its written Reasons for Judgment, the trial court described this case as a "ridiculous scenario," and further characterized the Connors' claims as "unfounded allegations." As to C.C., the trial court specifically noted:
This Court observed the Connor child carefully during the phase of the closeddoor trial during which she testified. There is no doubt in this writer's mind but that this child was coached and her testimony is rejected as being unreliable and untruthful, especially in view of the many changes in her testimony over the long period from the start of the investigation in August 1996 to the date she testified on December 8, 2000.
The Connors argue that this finding was in error. Where the trial court has not committed manifest error in its reasonable findings of fact, we will not substitute our judgment for that of the trial court. We do not believe that this particular finding made by the trial court was clearly wrong, *548 and in fact, by the evidence shown, appears reasonable.
Notably (and as the trial court observed), C.C.'s claims regarding the alleged abuse have changed throughout this litigation. C.C. was interviewed by numerous people over the course of time regarding her allegations, and her version of events was not just elaborated upon, but key elements of the story changed. Mrs. Connor testified that C.C. initially told her it was T.S. who had touched and kissed her inappropriately. After C.C. was examined by Dr. James Moncrief ("Dr.Moncrief"), a physician who found no physical signs of sexual abuse, Mrs. Connor claimed that C.C. recanted the version that T.S. had molested her and at that time accused Mr. Scroggs. C.C. also changed her version of events regarding Mrs. Scroggs' participation in the alleged abuse. In her deposition, C.C. claimed that Mrs. Scroggs was asleep when Mr. Scroggs abused her and, thus, uninvolved in the actual act of molesting her. Dr. Daniel J. Lonowski ("Dr.Lonowski"), a psychologist, interviewed C.C. at the request of Mrs. Connor and during the interview C.C. never indicated that Mrs. Scroggs had participated in the alleged molestation. However, later, in an affidavit, C.C. changed this aspect of her story and stated that Mrs. Scroggs "had participated... in acts of sexual molestation...." Finally, at trial, C.C.'s story had changed to the point that she claimed Mrs. Scroggs actually restrained her while Mr. Scroggs molested her a first time. Then, C.C. claimed Mrs. Scroggs helped Mr. Scroggs look for C.C. in the house, and after finding her, Mrs. Scroggs again held her hands while Mr. Scroggs molested C.C. a second time.
During trial, whereas C.C. easily answered questions posed by her attorney, when cross-examined by counsel for the Scroggs, she was evasive and frequently responded that she could not remember. Specifically, during examination by her attorney, she was asked if she remembered Dr. Lonowski. She quickly answered "yes" to remembering him, and further stated that she specifically remembered that he "[m]ostly just kept on asking me like kept on trying to doing it like really quick and getting me into it a whole bunch. I really didn't like that." She went on to say that she did not like the time she spent with Dr. Lonowski, although she did like talking to Dr. Bobby Stevenson ("Dr.Stevenson"), a psychologist and Ms. Phyllis Taylor ("Ms.Taylor"), a therapist, who also testified at trial. However, when questioned about Dr. Lonowski on cross-examination, C.C. stated that she could not remember him.
Other evidence of record further serves to support the trial court's conclusion that C.C. was not truthful, foremost of which is the fact that there was no physical evidence that C.C. was abused. Additionally, the testimony of Dr. Lonowski also supports the trial court's conclusion. Dr. Lonowski stated that after two interviews with C.C., she had made no statement nor corroborated the statements she had allegedly made to her parents that Mr. Scroggs had indeed molested her. In fact, the only information Dr. Lonowski had available to him that C.C. may have been molested by Mr. Scroggs was through the information provided by the Connors. Dr. Lonowski further stated that in his initial interview, C.C. appeared uneasy and asked to stop the interview, but that Mrs. Connor insisted the interview continue. Dr. Lonowski continued the interview with C.C. after Mrs. Connor had spent some time talking to C.C. Dr. Lonowski stated that after the initial appointment, the Connors did not return to him, and that he felt Mrs. Connor was angry with him regarding the results of his evaluation. He remembered *549 that Mrs. Connor had used "quite intense" language with him.
Finally, the fact that the Connors waited several days to have C.C. examined by a physician after they suspected she had been molested also calls into question the credibility of all. Mrs. Connor testified that she first became suspicious on a Saturday that C.C. had been molested; however, she did not take C.C. to Dr. Moncrief until the following Wednesday, claiming that was the first day she could get an appointment.
The Connors argue that the trial court erred in dismissing C.C.'s testimony as unreliable because both Dr. Stevenson and Ms. Taylor stated their belief that C.C. was truthful and had not been coached. However, the determination of an expert's credibility is a factual question subject to the manifest error/clearly wrong standard of review. Patterson v. Long, 96,0191 (La.App. 1st Cir.11/08/96), 682 So.2d 1327, writ denied, 96-2958 (La.02/07/97), 688 So.2d 499, citing, Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991); Harris v. Bronco Construction Company, 93-2139 (La.App. 1st Cir.10/07/94), 644 So.2d 805, writ denied, 94-2740 (La.01/06/95), 648 So.2d 931; Cheramie v. Horst, 93-1168 (La.App. 1st Cir.05/20/94), 637 So.2d 720. Moreover, after weighing and evaluating all of the evidence, the fact-finder is free to accept or reject the opinions expressed by the experts. Harris, supra at 807. In light of all the conflicting evidence before the trial court, we cannot say it was clearly wrong in rejecting the opinions of Dr. Stevenson and Ms. Taylor.
The Connors further argue that the Scroggs'"credibility problems" also serve to show that the trial court erred in its determination regarding C.C.'s reliability. However, we note that throughout this litigation, credibility issues abound, and the Connors' own credibility was also called into question. For example, Mrs. Connor claimed at trial that she had never been convicted of a crime. However, when reminded that she had pled guilty previously to two counts of battery of a school teacher, she had to admit, "[t]hat rings a bell."
Therefore, considering all of the evidence of record and, most importantly, the fact that the trial judge himself was able to observe the demeanor of C.C. and all of the witnesses involved, we determine that the trial court was not clearly wrong in finding C.C. "unreliable and untruthful."

The Scroggs' Defamation Claim
As stated, not only were there claims pending by the Connors against the Scroggs, but the Scroggs had filed their own claims of defamation against the Connors. Prior to the continuation of the trial on December 8th, the Connors moved for directed verdict on the defamation claims, which was denied. Then, upon the conclusion of the trial, judgment was entered in favor of the Scroggs, finding that the Connors had indeed defamed them. The Scroggs were each awarded $35,000. On appeal, the Connors argue that, procedurally, the Scroggs' defamation claims were premature. Substantively, the Connors maintain that the trial court erred in ruling in favor of the Scroggs on the defamation claims, urging that pursuant to applicable law, they did not defame the Scroggs.

Procedural Ability to Decide Defamation Claims
The Connors argue that the Scroggs' defamation claims were not ripe for decision by the trial court. They accurately state that the claim of defamation cannot be tried until the Connors' claim, in which the defamatory words were published, has been terminated. Steed v. St. *550 Paul's United Methodist Church, 31,521 (La.App.2d Cir.02/24/99), 728 So.2d 931, writ denied, 99-0877 (La.05/07/99), 740 So.2d 1290, citing Calvert v. Simon, 311 So.2d 13 (La.App. 2d Cir.1975). However, the Connors filed their answer to the Scroggs' petition and failed to raise any exceptions to such. Any objection that the Scroggs' claims were premature should have been raised by dilatory exception and filed prior to or in the Connors' answer. La. C.C.P. arts. 926 and 928. By not raising their dilatory exception of prematurity before or in their answer, the Connors waived any claim that the defamation lawsuit was premature. Gary v. Moncla Well Services, Inc., 97-1131 (La.App. 3d Cir.02/04/98), 706 So.2d 1096; See also, Steed, supra at 939, in which that court stated, "[W]e adhere to the general rule that if the defendant fails to assert prematurity, the defamation claim may validly proceed to trial before her own suit has been concluded."
As to the denial of the Connors' peremptory exception of no cause of action, said exception was filed after the Connors filed their answer to the Scroggs' petition. Pursuant to La. C.C.P. art. 929, when a peremptory exception is filed after a defendant's answer, said exception "shall be tried and disposed of either in advance of or on the trial of the case." Here, the trial court properly referred the exception of no cause of action to the trial on the merits.

Substantive Issue of Defamation Claim
A successful claimant in a defamation action must establish five elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) injury. Rogers v. Ash Grove Cement Co. 34,934 (La. App.2d Cir.11/02/01), 799 So.2d 841, writ denied, XXXX-XXXX (La.02/08/02), 808 So.2d 351. Defamatory words are those which harm the reputation of another "so as to lower him in the estimation of the community or to deter others from associating with him." Steed, supra, citing Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir. 1986), writ denied, 489 So.2d 246 (La. 1986).
When words expressly or implicitly accuse a person of criminal conduct, the words are considered defamatory per se. Rogers, supra at 848; Steed, supra at 940. If the plaintiff proves publication of defamatory per se words, the elements of falsity and malice are presumed although they may be rebutted by the defendant. Injury is also presumed. Rogers, supra.
Here, the Connors accused the Scroggs of criminal behavior; thus, the words would be considered defamatory per se.[2] Underlying any discussion of the legal requirements of defamation is the factual determination of the trial court that the accusations of C.C., as advanced by the Connors, were not true-a finding which we have determined was not clearly wrong in light of the record evidence.
Clearly, the Connors' accusations were published. Any communication to a third party, absent a privilege, absolute or qualified, is considered a publication. Douglas v. Thomas 31,470 (La. App.2d Cir.02/24/99), 728 So.2d 560. Not only did the Connors bring their false accusations to the Winn Parish Sheriff's Office and the Winn Parish District Attorney, *551 they also brought them to the School Board. In so doing, they related the false claims to the principal of the school, the school superintendent and the School Board at a public meeting. Additionally, Mr. Connor transmitted a letter on October 11, 1996 to the school superintendent and copied all of the School Board members and the Louisiana Department of Education. In that letter, not only did he make complaints against Mrs. Scroggs, an employee in whom the parties arguably had an interest, but he also stated the determined falsehoods regarding Mr. Scroggs, a person in whom the parties receiving the letter had no interest. As will be discussed, the Connors did not enjoy any privilege that would have allowed the publication of their claims.
Even if the plaintiff makes a prima facie showing of the essential elements of defamation, there is no recovery if the defendant shows that the statement was true or that the statement was protected by an absolute or qualified privilege. Wyatt v. Elcom of Louisiana, Inc., 34,786 (La.App.2d Cir.06/22/01), 792 So.2d 832. Truth is an absolute defense to the action for defamation. Moore v. Cabaniss, 29,834 (La.App.2d Cir.09/24/97), 699 So.2d 1143, writ denied, 97-2667 (La.01/09/98), 705 So.2d 1108.
The Connors claim as a defense their belief that the accusations against the Scroggs were truealthough after trial on the merits, the trial court made the ultimate factual determination that such were "unfounded allegations." As discussed herein, the trial court, after hearing all of the evidence and observing the witnesses, concluded that C.C. was "unreliable and untruthful," stating the belief that her allegations had been coachedpresumably by her parents. As we have determined herein, this finding was not clearly wrong, considering the conflicting evidence and history surrounding the abuse allegations. It follows, then, that since the trial court made a factual determination that C.C. had been coached, by implication the Connors had fabricated the story, and, thus, were not truthful. Hence, this defense cannot stand.
The Connors also maintain their allegations were subject to a qualified privilege. Statements made in the course of a judicial proceeding are subject to a qualified privilege if the statements are material to the proceeding, and are made with probable cause and without malice. Rogers, supra, citing, Freeman v. Cooper, 414 So.2d 355 (La.1982). Obviously, the complained of statements were material to the proceedings-they were the crux of the litigation. Thus, the issue becomes whether the statements were made with probable cause and without malice. Considering the trial court's finding that C.C. had been coached into accusing the Scroggs, it follows that the "unfounded allegations" could not have been made with probable cause. To further support this finding, we note that an arrest warrant was never issued for Mr. Scroggs because, according to the investigating officer, the judge to whom the warrant was presented "didn't feel like there was enough for him to sign [the] warrant." The investigating officer also turned his file over to the Winn Parish District Attorney, but charges were never brought against Mr. Scroggs.
The record also supports the finding that the accusations were made with malice. The trial court specifically stated that the Connors "carried out this five plus year odyssey against the Scroggs our (sic) of malice and anger." Supporting this finding was evidence that the Connors were angry that the Scroggs had used C.C.'s name in some juvenile proceedings regarding T.S., one fact to which all of the parties agreed. Mr. Connor admitted *552 at trial that the reason he brought the civil lawsuit was because the District Attorney would not bring the matter to the grand jury. Also bearing on this factual finding of the Connors' malice is the demeanor of the witnesses which the trial court was able to observe. For instance, at one point the trial court questioned Mrs. Connor, and the judge noted, "It is obvious that you are angry [at me]. Your voice, your conduct, your manner. Just calm down and tell us what about this case is relevant." The finding that the Connors acted with malice was not clearly wrong, and the trial court did not err in determining that the qualified immunity did not apply to the Connors.
We conclude the trial court was not clearly wrong in denying the Connors' motion for directed verdict and ultimately finding in favor of the Scroggs on their defamation claims.

Quantum
The Connors argue that the Scroggs failed to present evidence that they had been damaged as a result of the defamatory remarks. In its Reasons for Judgment, the trial court determined that the defamatory remarks had caused the Scroggs "years of emotional distress, worry, anxiety and worry...." Moreover, the trial court stated that:
[T]he damage to the reputation of the Scroggs' (sic) has been severely and permanently tarnished, to the humiliation, shame and distress of the Scroggs. There is no way to un-ring a bell, nor is there anyway to restore the Scroggs to the good reputation they had in the community prior to this situation.
As stated previously, the Scroggs were each awarded $35,000 in general damages for their defamation claims.
An award of damages in a defamation case is left to the great discretion of the trier of fact and should not be disturbed absent a showing of manifest error. Steed, supra; Garrett v. Kneass, 482 So.2d 876 (La.App. 2d Cir.1986), writ denied, 484 So.2d 671 (La.1986). Damages for defamation include both special damages and nonpecuniary or general damages. Steed, supra; Henderson v. Guillory, 546 So.2d 244 (La.App. 2d Cir.1989), writ denied, 551 So.2d 635 (La.1989); Lege v. White, 619 So.2d 190 (La.App. 3d Cir. 1993). General damages may include injury to reputation, personal humiliation, embarrassment, mental anguish, anxiety and hurt feelings. Henderson, supra.
It goes without saying that the sexual molestation of a child is a despicable and horrendous crime. Accusing a person of such a crime without cause is equally horrendous in light of the public humiliation such an allegation would cause the accused person. Such claims in a community like Winnfield would be even more humiliating as they would more easily permeate and divide a smaller community in which there is little anonymity. Moreover, considering Mrs. Scroggs' position as a school teacher of young children, such allegations were even more serious. Both of the Scroggs testified that they were humiliated and embarrassed by the claims made by the Connors. It was not manifestly erroneous for the trial court to have awarded the Scroggs damages for their embarrassment and humiliation, considering the seriousness of the allegations, the small community in which they were made, and the length of time which it ultimately took the Scroggs to clear their names. See, Thomas v. Busby, 95-1147 (La.App. 3d Cir.03/06/96), 670 So.2d 603, writ granted for other reasons, 96-0891 (La.05/17/96), 673 So.2d 601 (trial court considered "extreme embarrassment over a continuing period of time as a result of this defamation" to an attorney accused of stealing potting soil from a Wal-Mart store, and *553 who was ultimately awarded $25,000 for said embarrassment). Additionally, the amount of the award to each of the Scroggs is not excessive considering the range of awards by various Louisiana courts.[3]

Discretionary Rulings of the Trial Court
The Connors also claim the trial court abused its discretion in denying their motion to continue the trial and disallowing several of their witnesses and corresponding exhibits.

Denial of the Motions for Continuance
After several continued trial dates (October 8, 1998; May 6, 1999; October 6, 1999; July 6, 2000; August 15, 2000; and, October 10, 2000), the trial court denied the Connors' motion to continue the trial on December 8, 2000, which was already a continuation of the trial which had commenced on October 10th without the Connors or their attorney present.
As this court stated in Gilcrease v. Bacarisse, 26,318 (La.App.2d Cir.12/07/94), 647 So.2d 1219, writ denied, 95-0421 (La.03/30/95), 651 So.2d 845:
[A] continuance may be granted in any case if there is good ground therefor. La. C.C.P. art. 1601.
The trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance. Katz v. Melancon, 467 So.2d 1284 (La. App. 4th Cir.1985). Some factors to consider are diligence, good faith and reasonable grounds. Katz, supra; Sparacello v. Andrews, 501 So.2d 269 (La. App. 1st Cir.1986), writ denied, 502 So.2d 103 ([La.]1987). Equally important is the defendant's corollary right to have his case heard as soon as is practicable. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3d Cir.1975), writ denied, 329 So.2d 458 ([La.]1976). The trial judge may also weigh the condition of the court docket, fairness to both parties and other litigants before the court, and the need for orderly and prompt administration of justice. Keyes v. Johnson, 542 So.2d 209 (La.App. 3d Cir.1989), writ denied, 546 So.2d 1215 ([La.]1989).
Generally, a litigant whose lawyer withdraws at or near trial may be entitled to a continuance to employ another attorney. Sands v. State Through La. State Med. [Center] School of Dentistry, 458 So.2d 960 (La.App. 4th Cir.1984), writ denied, 460 So.2d 1044 ([La.]1984). However, because the defendant's desire to have the case against him tried is also a factor, the plaintiff is not entitled to indefinite continuances simply because he is unable to secure counsel. See Every v. City of New Orleans, 514 So.2d 556 (La.App. 4th Cir.1987), writ denied, 515 So.2d 1111 ([La.]1987).
A trial judge is vested with wide discretion in granting or denying a continuance under La. C.C.P. art. 1601, and his ruling will not be disturbed on appeal in the absence of clear abuse. Sauce v. Bussell, 298 So.2d 832 (La.1974); Coffman v. Mainhardt, 602 So.2d 264 (La. App. 2d Cir.1992). A trial judge is also vested with great discretion in dismissing a lawsuit with or without prejudice. *554 La. C.C.P. art. 1672 A; Matter v. McKinney, 310 So.2d 696 (La.App. 1st Cir.1975).
Here, the Connors argue that the trial court abused its discretion and denied them their day in court by not allowing a continuance of the trial on December 8th. Prior to the commencement of the trial on October 10th, the trial judge stated that he had spoken with the Connors' then attorney who informed him that she would not be at trial and that she could not locate the Connors. Notably, the Connors themselves failed to appear at the courthouse that morning for the trial. However, the trial commenced that morning with the trial court leaving the case open to be concluded on December 8th. Subsequently, the Connors' attorney withdrew her representation of the Connors, and on November 8, 2000, Mr. Connor filed a Motion for Continuance, stating that they had not retained new counsel. Said motion was denied, with the trial court noting that "[t]here have been several continuances granted to Randy Conner (sic) et al, already...." When the Connors did retain counsel, another motion to continue was made in open court on December 8th but was also denied.
We do not believe that the trial court's denial of the motions to continue was an abuse of discretion. Fairness to both parties and the need for orderly administration of justice are proper considerations in deciding whether to grant or deny a continuance. Gilcrease, supra. The trial court could not possibly have predicted when, or if, the Connors would retain an attorney, and the court cannot be closed to defendants who wish to have the case resolved. Id. The Connors are not entitled to indefinite continuances simply because they were unable to secure counsel. Id.
Although the Connors were unrepresented by counsel when their pro se motion was made, they had retained counsel by the December 8th trial date when the second motion for continuance was made. The record does not reflect any prejudice to the Connors from the denial of their motion, as it appears that their attorney, who also represents them on appeal, was able to effectively examine and cross-examine the witnesses. In making its ruling, the trial court noted that the case had been pending since December, 1996, and that five trial dates had been set previously. It stated that the Connors' previous counsel had been allowed a continuance of an earlier trial date when she was retained by the Connors. The trial court pointed out that the Connors failed to appear on October 10th, and their attorney at the time could not even locate them. Finally, the trial court recognized the frustration to the Connors' present counsel at trial but stated that the matter had been on the docket for so long that to further continue the trial would only serve to penalize the Scroggs and their attorneys. We agree. Such findings were not an abuse of discretion and the denials of the motions for continuance were not in error.

Disallowance of Witnesses and Exhibits
The Connors also argue that the trial court abused its discretion in striking its witness and exhibit lists which resulted in certain witnesses being unable to testify at trial. They maintain that the action, again, denied them their day in court.
In matters of discovery, such as whether a witness has been listed in a timely manner, decisions of the trial court should not be disturbed in the absence of an abuse of discretion. Harwell v. Haspel-Kansas Investments Partnership, 598 So.2d 1284 (La.App. 4th Cir.1992), citing Franklin v. Harvill, 406 So.2d 696 (La. App. 2d Cir.1981). Specifically, where a *555 pre-trial order has not been complied with, as is the case here, it is within the trial court's discretion to disallow witnesses, expert or not, from testifying. See, Reed v. Columbia/HCA Information Systems, Inc., 2000-18 (La.App. 5th Cir.04/11/01), 786 So.2d 142, writ denied, XXXX-XXXX (La.06/22/01), 794 So.2d 796.
Here, the trial court noted at the pretrial hearing prior to the December 8th trial that the Connors had not "complied with three or maybe four [pre-trial] orders... ordering [them] to produce a list of witnesses and a list of exhibits...." Nonetheless, the trial court gave the Connors latitude and only struck those witnesses which were a "surprise" to the Scroggs. Considering the amount of time the case had been pending and the fact that several trial dates had been previously set, for which the Connors should have filed witness and exhibit lists, we conclude that the trial court did not abuse its discretion in striking the Connors' witness and exhibit lists filed at the eleventh hour.

Denial of Motion for New Trial
Finally, the Connors maintain that the trial court erred in denying their motion for new trial, which they argue was based on the various issues raised as assignments of error and discussed herein. The trial court has much discretion in determining if a new trial is warranted, and its ruling cannot be set aside except in a case of a manifest abuse of that discretion or where the facts convince the reviewing court that a miscarriage of justice would result. Crump v. Bank One Corp., 35,990 (La.App.2d Cir.05/08/02), 817 So.2d 1187, citing, Lamb v. Lamb, 430 So.2d 51 (La. 1983); Hickman v. Wm. Wrigley, Jr. Co., Inc., 33,896 (La.App.2d Cir.10/04/00), 768 So.2d 812. Considering that we have determined the trial court did not err regarding the assignments of error raised by the Connors, it follows that the trial court's denial of the motion for new trial was warranted and not an abuse of discretion.

Appeal of the School Board's Summary Judgment
Our ruling that the trial court did not err in its decision regarding the merits of the case pretermits our addressing the appeal regarding the grant of summary judgment in favor of the School Board. The claims against the School Board were derivative of the claims that Mr. Scroggs had sexually abused and Mrs. Scroggs had threatened C.C. A finding that there was not sufficient proof that C.C. was molested or threatened by the Scroggs means that the claims against the School Board for the alleged actions of Mrs. Scroggs stemming from the claimed abuse also fail. This was conceded by counsel for the Connors at oral argument of the appeal. Therefore, the summary judgment granted on behalf of the School Board is also affirmed.

CONCLUSION
For the foregoing reasons, the trial court's judgment granting the Motion for Summary Judgment filed by the Winn Parish School Board is hereby affirmed. The trial court's judgment dismissing the claims of Randy and Rachel Connor against Eddie and Lori Scroggs is also affirmed. Finally, the trial court's judgment on behalf of the Scroggs in their defamation claims against the Connors is likewise affirmed. Costs of this appeal are assessed to Randy and Rachel Connor.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, KOSTELKA, and DREW, JJ.
Rehearing denied.
NOTES
[1] Initially, the Connors filed a timely appeal of the judgment granting the School Board's motion for summary judgment (docket nos. 35,521-CA c/w 35,522-CA) (the "School Board appeal"). However, after conclusion of the trial on the claims between the Connors and the Scroggs, the School Board sought to supplement the record in the School Board appeal with a copy of the trial court's Reasons for Judgment after trial. At that point, an order was entered by this court to hold in abeyance the School Board appeal pending the finality of the judgment rendered after trial. Ultimately, the Connors' motion for new trial was denied and their appeal against the Scroggs was filed. This "second" appeal (docket nos. 36,109-CA c/w 36,110-CA) has been consolidated with the School Board appeal.
[2] Although the Connors' petition did not specify particular crimes by name violated by the Scroggs, the accusation that Mr. Scroggs molested C.C. would be a violation of La. R.S. 14:81.2(A) (molestation of a juvenile) and/or La. R.S. 14:43.1 (sexual battery). The accusation that Mrs. Scroggs threatened C.C. could be considered a violation of La. R.S. 14:129.1(a) (intimidating, impeding or injuring witnesses). At trial, Mrs. Scroggs was further accused of aiding in the molestation.
[3] Melancon v. Hyatt Corporation, 589 So.2d 1186 (La.App. 4th Cir.1991), writ denied, 592 So.2d 411 (La.1992) ($10,000); Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3d Cir. 1981), writ denied, 410 So.2d 760 (La.1981), cert. denied, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982) ($15,000); Thomas, supra, ($25,000); Trentecosta v. Beck, 95-0096 (La.App. 4th Cir.02/25/98), 714 So.2d 721 ($50,000), writ denied, 98-1578 and 98-1585 (La.10/09/90), 726 So.2d 28; Steed, supra ($90,000); McHale v. Lake Charles American Press, 390 So.2d 556 (La.App. 3d Cir.1980), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981) ($150,000).