| ¡WALTER J. ROTHSCHILD, Judge.
The plaintiff, Duane Landry, appeals the trial court’s judgment in favor of the defendants, Sheriff Harry Lee and several of his deputies, finding that the plaintiff did not prove his claims of false arrest and defamation. For the reasons which follow, we affirm.

FACTS

In March of 1998, Duane Landry was employed by the Jefferson Parish Sheriffs Office (“JPSO”) as a deputy assigned to the Jefferson Parish Correctional Center *1100 (“JPCC”). Lieutenant Ronald Gurba received information, from a former inmate, Robert Allen, that a deputy intended to bring marijuana to an inmate, Kenneth Hill, who was charged with first degree murder and was being held at the JPCC: An investigation ensued.
IsCaptain Elton Reider, who is second in command of the JPSO’s Narcotics Division, participated in the investigation. At trial, Captain Reider testified that Robert Alien had previously been incarcerated at the JPCC with Kenneth Hill. Based on information received by Lieutenant Gurba from Mr. Allen, Captain Reider was advised that Mr. Hill had asked Mr. Allen to put marijuana in a cigarette pack and to give it to his “pardner,” who was a deputy working at the JPCC. Mr. Allen did not know the name of the deputy but would recognize him. Lieutenant Gurba met with Mr. Allen and showed him pictures of the JPCC employees, and Mr. Allen identified Duane Landry as Mr. Hill’s “pardner.”
Captain Reider testified that he and his superior, Colonel Thevenot, sought Mr. Allen’s cooperation. They obtained some marijuana from the crime lab, put it in a plastic baggie, folded the baggie, and placed it in a cigarette pack, after removing some cigarettes. Sergeant Joseph Williams assisted Captain Reider with the investigation, and he testified that he gave Mr. Allen the cigarette pack containing marijuana.
Captain Reider stated that it was an opened pack with some cigarettes on top of the marijuana baggie, but the pack was very bulky and the contour did not feel as if it contained cigarettes. He stated that they tried to make it as obvious as possible that it contained contraband “without putting a sign on it.” Sgt. Williams also testified that they tried to pack the marijuana so that it was as obvious as possible that the pack contained contraband.
On March 5, 1998, Mr. Allen was wired with a recording device and a van was set up to videotape outside the JPCC. Captain Reider testified that when Mr. Landry was walking from his car to the JPCC for work, Mr. Allen approached him and asked him to give the cigarette pack to Kenneth Hill. Mr. Landry accepted the pack and put it in his top pocket. He proceeded into the jail, went to roll-call, Rwhich lasted about fifteen minutes, and then took the elevator to the third floor pod to work. When he got to the third floor, he was accosted by Sergeant Williams and Agent Crossen, who retrieved the pack, and then they went to Chief Schwab’s office where Mr. Landry gave a statement. Captain Reider testified that he had hoped that Mr. Landry would go to a supervisor with the contraband to report what had happened outside the jail, but he did not do so. Mr. Landry was arrested and charged with possession of marijuana, introducing contraband into a penal institution, and malfeasance in office.
In his statement to police and at trial, Duane Landry indicated that on March 5, 1998, as he approached the JPCC to report for work, he met with Robert Allen. He stated that Mr. Allen asked him to bring a pack of cigarettes to an inmate, Kenneth Hill, and he agreed. Mr. Landry testified that Mr. Allen handed him an opened pack of Kool cigarettes and he put them in his pocket, but he never examined or looked in the pack. He went- into the jail, reported for roll-call, and then went to the third floor, where he was stopped by Sergeant Williams and Agent Crossen. Agent Cros-sen took the cigarette pack from his pocket and dumped it out, revealing the marijuana.
At trial, Mr. Landry stated that he took the cigarette pack only to avoid confronta *1101 tion with Mr. Men, but he did not know that there was marijuana in the pack. He indicated that Kenneth Hill had asked him three weeks earlier to bring heroin to him, but he refused. He admitted bringing cigarettes to another inmate on two prior occasions, but those cigarette packs were sealed. Mr. Landry acknowledged that he knew it was against the department’s rules and regulations to bring cigarettes or anything to an inmate. However, he stated that he did not knowingly bring marijuana into the jail and there was no pre-arranged deal with |BMr. Hill to bring contraband to him. He testified that he was going to smoke the cigarettes himself, and he never intended to give them to Mr. Hill.
Mr. Landry testified that the local newspaper, The Times Picayune, reported that he was charged with possession of marijuana and bringing contraband into a correctional facility, and that he was fired for violating JPSO policies and procedures. However, the newspaper articles did not indicate that the marijuana came from the JPSO. Two identical articles from the Times Picayune were admitted at trial. Mr. Landry further testified that he was refused employment with the Kenner Police Department and other potential employers because of his arrest, even though the District Attorney’s office did not file charges against him. In addition, he stated that many of his friends in law enforcement turned their backs on him.
On cross-examination, Mr. Landry testified that he was not involved with drugs at the time of the incident, but he admitted to subsequently being arrested in Mississippi for possession of 400 ecstasy pills. He stated that the pills belonged to the guy he was with, not him, but they were both charged and he pled guilty based on his attorney’s advice.
Colonel John Fortunato testified that he is the spokesman for the JPSO who was involved in issuing a press release to the Times Picayune regarding Mr. Landry’s arrest and termination from employment. At the time that he issued the press release, he did not know details about how the incident occurred or that the marijuana had been supplied by the JPSO. He indicated that he received the information for the press release from the arresting officers and/or Colonel Thevenot.
After Colonel Fortunato’s testimony, the plaintiff rested, subject to calling Sheriff Harry Lee via deposition. The defense moved for a directed verdict as to ftthe charges against Deputy Duncan and Agent Richardson, on the basis that there was no testimony whatsoever regarding these individuals. The plaintiff had no objection, and the trial court granted the motion for directed verdict, dismissing Deputy Duncan and Agent Richardson from the lawsuit.
The defense also moved for a directed verdict as to Colonel Fortunato, arguing that he was sued only for defamation, but the elements of defamation were not proven. The plaintiffs attorney opposed the motion, arguing that Colonel Fortunato committed defamation because he reported that Mr. Landry brought marijuana into the correctional center, but he did not report that the JPSO “planted it” on him. He argued that the newspaper articles were false and defamatory, because Landry did not knowingly and intentionally bring marijuana into the jail. The trial court granted the motion for directed verdict as to Colonel Fortunato and dismissed him from the lawsuit.
Thereafter, the defense called Captain Ronald Gurba,[1] who has worked at the *1102 JPCC for 20 years. He testified that he is the person who originally received the information from Robert Allen, and he contacted his superior, Chief Schwab, about this information. He also informed the bureau about the information he received, but he had no further participation in this matter. He testified that Mr. Landry had not worked under his supervision at the jail, and he did not know or dislike Mr. Landry. He stated that Mr. Allen had previously reported information about happenings at the jail and the information had been reliable, so there was no reason to disbelieve his information from Mr. Men about Mr. Landry.
Sheriff Harry Lee was deposed on April 11, 2003. He stated that it was alleged that Mr. Landry was routinely bringing contraband into the jail, but he did not know details of the investigation. He believes it was his responsibility to find |7out whether or not Mr. Landry was bringing contraband in to the jail and if so, to take whatever action was necessary. He does not consider putting marijuana in a cigarette pack and handing it to someone as “planting evidence.” He believes it is probably the only investigative tool that could have been used in this situation.
After Sheriff Lee’s deposition was submitted, the trial court rendered a judgment in favor of the defendants, dismissing all of Mr. Landry’s claims against them. In the judgment, the trial court found that “all actions taken by the defendants during the incident at issue were taken in good faith, with probable cause, and without malice.” This timely appeal follows.

DISCUSSION

In his first assignment of error, Mr. Landry asserts that the trial court applied an incorrect legal standard and erred in finding that the actions of the JPSO and Sheriff Lee did not constitute a false arrest of Mr. Landry. He argues that the material facts in this case are not in dispute, and these facts support Mr. Landry’s claims against the defendants for false arrest under both federal and state law. He also asserts that “planting illegal drugs on an innocent person and then arresting them for possession of the planted illegal drugs constitutes a false arrest.”
Mr. Landry also contends that this Court should conduct a de novo review because the trial judge made an error of law when he required Mr. Landry to prove his false arrest claim by showing that the defendants acted with malice and without good faith. The judgment does not distinguish between the false arrest and defamation claims. Rather, it indicates that “all actions” taken by the defendants were “in good faith, with probable cause, and without malice.” The judgment does not establish that the trial court required Mr. Landry to show that the defendants acted with malice or in bad faith in order to prevail on his claims of false arrest. | ¡^Accordingly, it has not been shown that the trial judge applied an incorrect legal standard.
To establish a false arrest claim, the plaintiff must prove that the arrest was unlawful and that the unlawful arrest resulted in injury. Saucier v. Players Lake Charles, L.L.C., 99-1196 (La.App. 3 Cir. 12/22/99), 751 So.2d 312, 316. An arrest is unlawful when the police officers in question did not have probable cause to make the arrest. Tabora v. City of Kenner, 94-613 (La.App. 5 Cir. 1/18/95), 650 So.2d 319, 322, writ denied, 95-402 (La.3/30/95), 651 So.2d 843. Probable cause exists when the facts and circumstances within the arresting officer’s knowledge, and of which he has reasonable *1103 and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Gibson v. State of Louisiana, 99-1730 (La.4/11/00), 758 So.2d 782, 788, cert. denied, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000). The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. Id. at 789.
In the present case, the evidence shows that the officers had probable cause to arrest Duane Landry. Robert Allen contacted Lieutenant Gurba and informed him that a deputy intended to bring marijuana hidden in a cigarette pack to an inmate, Kenneth Hill, who was being held at the JPCC. According to Lieutenant Gurba, Mr. Allen had previously given reliable information about happenings at the jail. Captain Reider met with Mr. Allen and he identified Mr. Landry as the deputy who would deliver contraband to Mr. Hill. On March 5, 1998, as predicted by Mr. Allen, Mr. Landry accepted the cigarétte pack. According to Captain Reider and Sergeant Williams, the cigarette pack was open and obviously contained something other than cigarettes.
|9The trial court apparently believed that Mr. Landry knew that he was possessing a cigarette pack containing contraband. Considering the testimony and evidence in this case, we find that there was probable cause for Mr. Landry’s arrest. Accordingly, the trial court did not err in finding that Mr. Landry did not prove his false arrest claim against the defendants, and we affirm this ruling of the trial court.
In his second and final assignment of error, Mr. Landry contends that the trial court applied an incorrect legal standard and erred in finding that the actions of the JPSO and Sheriff Lee in publicizing Mr. Landry’s arrest did not constitute defamation.
To maintain an action for defamation, the plaintiff has the burden of proving the following elements: 1) defamatory words; 2) publication; 3) falsity; 4) malice (actual or implied); and 5) injury. Johnson v. Lanoix, 03-143 (La.App. 5 Cir. 5/28/03), 847 So.2d 1283, 1286. A defamatory communication is one that tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Johnson v. KTBS, Inc., 39,022 (La.App. 2 Cir. 11/23/04), 889 So.2d 329, 332. Accusations of criminal conduct are defamatory per se. Bujol v. Ward, 00-1393 (La.App. 5 Cir. 1/30/01), 778 So.2d 1175, 1177, unit denied, 01-555 (La.4/27/01), 791 So.2d 117. Generally, defamation per se creates presumptions of falsity and malice, but these presumptions can be rebutted by the defendant. Huxen v. Villasenor, 01-288 (La.App. 5 Cir. 9/25/01), 798 So.2d 209, 212; Connor v. Scroggs, 35,521 (La.App. 2 Cir. 6/12/02), 821 So.2d 542, 550. Truth is a valid defense to an action for defamation. Id.
.The judgment does not reveal that the trial judge used the wrong legal standard. Rather, the language reasonably suggests that the trial judge believed l10that the presumption of malice was overcome in this instance. However, even if the trial court had used an incorrect legal standard, the testimony reveals that all of the elements of defamation were not proven, because the presumption of falsity was overcome by the defendants.
Mr. Landry argues that the information issued by the JPSO, which was published twice in the Times Picayune, was defamatory, because it indicates that Mr. Landry committed a crime, which is defamatory per se. He also asserts that the newspa *1104 per articles made no reference to the fact that the JPSO planted the marijuana on him.
The article at issue, which was published twice in the Times Picayune, reads as follows:
Jail deputy booked on pot charge, fired[2]
' A Jefferson Parish sheriffs deputy assigned to the correctional center was arrested Thursday, booked with possession of marijuana and then fired, a spokesman for the department said.
Duane Landry, 24, of Kenner, had worked at the correctional center about six months. An internal investigation led to the arrest, said Col. John Fortu-nato, spokesman for the Sheriffs Office.
Landry will be charged with possession and intention to distribute marijuana, introducing contraband into a correctional facility and malfeasance of an officer, Fortunato said.
This article simply reports Mr. Landry’s arrest and the charges against him. It does not set forth details or present any false information. Mr. Landry.was indeed arrested and terminated from employment with the JPSO for possessing marijuana and bringing it into a correctional facility with the intention of distributing it to an inmate. Mr. Landry did not establish that the information released by the JPSO was defamatory, because the testimony supports the finding that the information released to the Times Picayune was true and that any damages |nsuffere.d by Mr. Landry were caused by his own actions. As stated above, truth is a valid defense, in a civil suit for defamation. Accordingly, we find that the trial court did not err in finding that the actions of the JPSO and Sheriff Lee in issuing a press release about Mr. Landry’s arrest did not constitute defamation, and we affirm this ruling of the trial court.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court, dismissing the plaintiffs claims against the defendants for false arrest and defamation.

AFFIRMED.

. Although he was a lieutenant at the time of the incident, Ronald Gurba was promoted to *1102 captain before the trial.

. Although the substance of the two publica- ■ tions is identical, the caption on the second article reads, "Jeff deputy booked on marijuana charge.”