833 So.2d 1282 (2002)
Perry THOMAS, Plaintiff-Appellant
v.
The CITY OF MONROE LOUISIANA, The Monroe Police Department, Noe Enterprises, Inc., and Noe Corporation, L.L.C., Defendants-Appellees.
No. 36,526-CA.
Court of Appeal of Louisiana, Second Circuit.
December 18, 2002.
*1283 Louis Granderson Scott, for Plaintiff-Appellant.
Thomas V. Gardner, Jr., Monroe, Nanci S. Summersgill, for Defendant-Appellee, City of Monroe, Monroe Police Department.
Hudson, Potts & Bernstein, by: William T. McNew, A. Jill Futch, Ashley S. Burch, Monroe, for Defendant-Appellee, NOE Corporation, L.L.C.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiff, Perry Thomas, appeals a decision by the trial court granting a special motion to strike filed on behalf of one of the defendants, NOE Corporation, L.L.C., dismissing the plaintiff's claims of defamation and violation of his civil rights. The dismissal was based upon the trial court's refusal to consider affidavits submitted by the plaintiff in opposition to the special motion to strike. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff is the compliance director for the Planning and Urban Development Department, EEO Compliance Division, of the City of Monroe. According to a report by the Monroe Police Department, on November 25, 2000, an officer was approached by a woman leaving a movie theater in Monroe. She complained that, while watching a children's movie, "How The Grinch Stole Christmas," she saw a man sitting alone, stroking his genitals, but not exposing them. The offender pointed out by the woman was the plaintiff. The woman left before the police could get her name.
The officer approached the plaintiff, advised him of his Miranda rights, and questioned *1284 him about the incident. According to the report, the plaintiff denied the accusation, became very emotional, and then appeared to become ill. The plaintiff was transported to the police substation for evaluation of his medical condition.
According to the officer, once inside the station, the plaintiff collapsed to his knees and said he was a "sick man." The officer called an ambulance. The plaintiff stated that he did not need an ambulance and left the station before it arrived.
A complaint report was generated by the police department, detailing the incident. This report was obtained by a local television station, KNOE TV 8. On November 27, 2000, the station aired a report about the complaint. Another story was broadcast on November 28, 2000. The story stated that meetings were being held by city officials to decide what action to take regarding the allegations against the plaintiff. The second story mentioned a 1989 incident in which the plaintiff was cited by the Northeast Louisiana University Police with battery on police officers, resisting arrest, and trespassing.
On November 26, 2001, the plaintiff filed suit against the City of Monroe, the Monroe Police Department, and NOE Corporation L.L.C. (NOE).[1] The plaintiff claimed that he informed NOE that the police complaint was untrue. However, NOE aired the story, based on the police report, without verifying the existence of the complainant. The plaintiff contended that the complainant did not exist. He asserted that the television station's actions were designed to embarrass, humiliate, destroy, hurt, and cause economic hardship to him. He also alleged that the station's actions were in accordance with a long-standing tradition to seek removal of "African-Americans from positions of responsibility by casting doubt upon their abilities, motives, and character." He claimed that the accusations against him were unwarranted, false, malicious, and harmful and that the reports generated gossip, ridicule, and mistrust toward him.
The City of Monroe and the Monroe Police Department filed an answer denying the plaintiff's allegations. NOE filed a special motion to strike under La. C.C.P. art. 971. In the motion, NOE asserted that the news stories concerning the plaintiff were broadcast in furtherance of the station's right to free speech and concerned issues of public interest in connection with a public official. NOE argued that the plaintiff was required to establish with pleadings and affidavits that he has a probability of success on his claims of defamation. If he cannot show a probability of success, NOE argued that the plaintiff's claim should be dismissed and attorney fees awarded to it.
In its memo in support of the special motion to strike, NOE asserts that the plaintiff is a public official who must meet the "reckless disregard" standard in order to prove defamation. NOE asserts the qualified privilege for public reports based on public records, arguing that even if the police report is not true, NOE could rely on the report as factually correct and the plaintiff could not base a defamation claim on the broadcast of the contents of the report. According to NOE, the station merely reported a complaint alleging misconduct and the news report did not state that the police report was true.
Attached to the special motion to strike was the affidavit of the reporter, Ken Booth, stating that he had no reason to *1285 believe that the police report was not true. He also stated the report was obtained pursuant to an established policy of reporting matters on file as a matter of public record. Attached to the affidavit was a copy of the police report in this incident, a copy of the report in the 1989 incident at Northeast Louisiana University, and a transcript of the televised news stories at issue in this case.
The hearing on the motion was held on Monday, March 18, 2002. On Friday, March 15, 2002, the plaintiff filed three affidavits in opposition to the special motion to strike. The plaintiff's actual opposition to the special motion to strike was not filed until the day of the hearing. He urged that he is not a public official and therefore, was not subject to the higher standard of proof under New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[2] However, even if the higher standard applied, he claimed that there was a reckless disregard for the truth by NOE. Basically, he alleged that there were numerous factors indicating that the police report was false and that NOE took no measures to verify the report.
There is no transcript of the hearing on the special motion to strike. The minutes show that the matter was taken up by the trial court which refused to consider the affidavits filed by the plaintiff. On May 8, 2002, the trial court signed an order granting the defendant's special motion to strike, dismissing the plaintiff's claims against NOE with prejudice.[3] The trial court did not give written reasons for the judgment. The plaintiff appealed, claiming that the trial court erred in failing to consider his affidavits and erred in granting the special motion to strike in favor of NOE.

DISCUSSION
The special motion to strike is governed by La. C.C.P. art. 971 which provides:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the proceeding, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.
B. In any action subject to Paragraph A of this Article, a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is *1286 solely intended to cause unnecessary delay, the court shall award reasonable attorney's fees and costs to a plaintiff prevailing on the motion.
C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.
D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.
E. This Article shall not apply to any enforcement action brought on behalf of the state of Louisiana by the attorney general, district attorney, or city attorney acting as a public prosecutor.
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
(2) "Petition" includes either a petition or a reconventional demand.
(3) "Plaintiff" includes either a plaintiff or petitioner in a principal action or a plaintiff or petitioner in reconvention.
(4) "Defendant" includes either a defendant or respondent in a principal action or a defendant or respondent in reconvention.
This provision was added by Acts 1999, No. 734, § 1. Section 2 of the Act provides:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly. [Emphasis supplied.]
This provision is virtually identical to the California Code of Civil Procedure Section 425.16. The California provision is an anti-SLAPP statute. SLAPP is an acronym for Strategic Lawsuits Against Public Participation. As stated above, the provision is to be construed broadly.
The plaintiff holds a position of responsibility in the city government of Monroe. Allegations of criminal conduct are *1287 relevant to an official's fitness for office. See Monitor Patriot Company v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971). Therefore, the complaint against the plaintiff was a matter of public interest, spurring application of the special motion to strike. In order to overcome NOE's motion, the plaintiff was required to show a probability of success on his claims of defamation and violation of his civil rights by the television station. The plaintiff has not met that burden in this case.
Although the plaintiff did not raise the issue in an assignment of error, he argues in his brief that the provision does not apply in this case because NOE is a corporation and is not a "person" within the contemplation of the article. This argument is without merit.
Corporations are included in the definition of "person" in the Louisiana Code of Civil Procedure. See La. C.C.P. art. 5251(12).[4] Therefore, NOE is a "person" protected by this statute. We also note that La. C.C.P. art. 971 has previously been successfully invoked by television stations in this state. See Stern v. Doe, XXXX-XXXX (La.App. 4th Cir.12/27/01), 806 So.2d 98; Lee v. Pennington, XXXX-XXXX (La. App. 4th Cir.10/16/02), 830 So.2d 1037.
The plaintiff asserts that the trial court erred in failing to consider his affidavits in opposition to the special motion to strike filed shortly before the hearing.
The plaintiff recognizes that the motion to strike is similar to, but not identical to a motion for summary judgment. In a motion to strike, a person who has been sued, arising out of an act in furtherance of the person's exercise of free speech and in connection with a public issue, may seek to strike the claim. The plaintiff must then present affidavits showing a probability of success on the claim.
The plaintiff also argues that, although a motion for summary judgment specifies a time limit for filing opposing affidavits, the same is not true for a special motion to strike. According to the plaintiff, there was no time limit by which the affidavits were to be filed. In this case, it appears that because the plaintiff's affidavits were filed a very short time before the hearing, they were not considered by the trial court.
La. C.C.P. art. 971 provides no time limit for serving the opposing affidavits. It is within the trial judge's discretion to decide whether affidavits are filed within a reasonable time. In this case, while the affidavits were filed the Friday afternoon before the trial on Monday, it is unclear exactly when the affidavits were transmitted to the defendant. Since the time line is unclear, and because the result of La. C.C.P. art. 971 is harsh, we will consider the affidavits for this de novo review.
Even if the plaintiff's affidavits had been considered, he still would not have carried his burden under La. C.C.P. art. 971 of establishing a probability of success on his claims of defamation and violation of his civil rights.
Defamation involves the invasion of a person's interest in his or her reputation and good name. City of Natchitoches v. Employers Reinsurance Corporation, XXXX-XXXX (La.App. 3d Cir.6/5/02), 819 So.2d 413. A successful claimant in a defamation action must establish five elements: (1) defamatory words; (2) publication; *1288 (3) falsity; (4) malice; and (5) injury. Connor v. Scroggs, 35,521 (La.App.2d Cir.6/12/02), 821 So.2d 542; Rogers v. Ash Grove Cement Co., 34,934 (La.App.2d 11/02/01), 799 So.2d 841, writ denied, XXXX-XXXX (La.02/08/02), 808 So.2d 351. Defamatory words are those which harm the reputation of another so as to lower him in the estimation of the community or to deter others from associating with him. Connor v. Scroggs, supra.
When words expressly or implicitly accuse a person of criminal conduct, the words are considered defamatory per se. If the plaintiff proves the publication of defamatory per se words, the elements of falsity and malice are presumed although they may be rebutted by the defendant. Connor v. Scroggs, supra.
Even if the plaintiff makes a prima facie showing of the essential elements of defamation, there is no recovery if the defendant shows that the statement was true or that the statement was protected by an absolute or qualified privilege. Connor v. Scroggs, supra.
On the ground of public policy, the law recognizes certain communications as being privileged, and as such not within the rules imposing liability for defamation. A communication may be either (1) absolutely privileged, or (2) only qualifiedly or conditionally privileged. A person may be held liable in damages for libel or slander even though the communication is qualifiedly or conditionally privileged if it can be shown that he was guilty of actual malice. Francois v. Capital City Press, 166 So.2d 84 (La.App. 3d Cir.1964). Courts of this state have held that where a publisher of a news story relies upon a police report, the publisher will not be held liable for defamation, even if the information in the report is inaccurate. See Wilson v. Capital City Press, 315 So.2d 393 (La.App. 3d Cir.1975), writ denied, 320 So.2d 203 (La.1975). In Louisiana, it has been held that a newspaper has a qualified or conditional privilege to report the fact that a person has been arrested and to report the charges for which he is being held, provided that the report does not assume the guilt of the accused person and is not otherwise defamatory. Francois v. Capital City Press, supra.
In the present case, NOE did not report that the plaintiff had been arrested and did not state that the allegations against the plaintiff were true. It merely reported, pursuant to a police report, that a complaint had been made against the plaintiff. NOE had a qualified privilege to rely upon the police report.
The plaintiff argues that NOE either knew that the report was false or should have investigated the report further. Based upon the affidavits supplied by the plaintiff, this argument is not supported by the record.
The affidavit of Charles Owens stated that he attended the movie, sat directly across the aisle from the plaintiff, did not see any inappropriate behavior by the plaintiff, and did not see any females close to the plaintiff or in a position to see the plaintiff while he was in the theater.
The affidavit of Robert Kelly, Jr., former police chief of Richmond, Louisiana, former member of the Army military police, and an investigator for the Fourth Judicial District Indigent Defender Board, pointed out several factors that indicated to him that the police report should not have been generated. He said that it was unusual and uncommon for a police report to be generated when there was no arrest, no witness, and no victim. He said that in the absence of these factors, the generation of a police report serves no recognizable law enforcement function.
*1289 The third affidavit was that of the plaintiff, claiming that the female complainant did not exist and denying the allegations of sexual misconduct. He claimed that NOE put pressure on city officials to take action against him and made the news reports even after the plaintiff warned NOE that he would file a lawsuit against the station for defamation if the police report was broadcast. According to the plaintiff, NOE then did nothing to verify the police report. He also stated that the report was not obtained in the usual routine briefing to area news media.
According to the plaintiff, these affidavits establish that NOE had actual knowledge that the statements regarding the plaintiff were false, or that NOE recklessly disregarded the truth.
NOE merely reported that a complaint had been made to the police regarding the plaintiff. There is no dispute that the police documented and reported such a complaint. Other than the plaintiff's self-serving affidavit, there is nothing indicating that the report was made with actual malice by the defendant. Therefore, even if the trial court had considered the affidavits filed by the plaintiff, the court still could have properly granted the special motion to strike.

CONCLUSION
For the reasons stated above, we affirm in all respects the judgment of the trial court in favor of the defendant, NOE Corporation, L.L.C., granting its special motion to strike and dismissing with prejudice the claims of the plaintiff, Perry Thomas. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The plaintiff named as defendants NOE Enterprises, Inc. and NOE Corporation, L.L.C. NOE Corporation, L.L.C., indicated that NOE Enterprises, Inc., KNOE, Inc., and WNOE, Inc. were merged into NOE Corporation, L.L.C. in 1996.
[2] In New York Times Company v. Sullivan, supra, the United States Supreme Court held that the First and Fourteenth Amendments to the United States Constitution requires a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
[3] The court reserved a ruling on the issue of attorney fees.
[4] La. C.C.P. art. 5251(12) provides:

Except where the context clearly indicates otherwise, as used in this Code:
(12) "Person" includes an individual, partnership, unincorporated association of individuals, joint stock company, corporation, or limited liability company.