847 So.2d 225 (2003)
Richard L. BAXTER, Respondent,
v.
John L. SCOTT, Applicant.
No. 37,092-CW.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2003.
Order Denying Rehearing June 19, 2003.
*227 J. Michael Rhymes, Monroe, for Applicant.
Forrester, Jordan & Dick, By: Shelly D. Dick, Baton Rouge, for Respondent.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
A writ of certiorari was granted to review the trial court's denial of a special motion to strike, filed by the defendant pursuant to La. C.C.P. art. 971, against the petition of the plaintiff in this defamation action. Finding that the plaintiff failed to establish a probability of success on his claim, we reverse the trial court's judgment and grant the defendant's motion to strike.

FACTS
This writ arises from a defamation action by Richard Baxter, the former Vice President of External Affairs for the University of Louisiana at Monroe (ULM). Baxter originally filed suit against John Doe # 1-6, but later amended his petition to name John Scott, a former professor at ULM, as the defendant. Scott created and authored "WWW.TRUTHATULM" or "Truth at ULM" an anonymous website on which he addressed what he considered to be matters of mismanagement and abuse of office by members of the administration of ULM's President Lawson Swearingen. Baxter was a member of Swearingen's administration, and Scott's website included references to Baxter. Baxter was able to learn Scott's identity through proceedings filed in federal district court. Baxter then named Scott as a defendant in this state court defamation action.
The alleged defamatory statements are set forth in paragraphs 13-19 of Baxter's original petition, which provides as follows:
13.
TRUTHATULM has specifically targeted Baxter as a member of the Administration's alleged "cover up." In one statement posted on the TRUTHATULM in the Fall of 2000, the web site maliciously refers to Baxter as the "ULM Administration hatchet man" and accuses Baxter of being a member of a team to cover up the alleged mismanagement of ULM.
14.
Upon information and belief, John Doe # 1 on or about January 17, 2001, published the following malicious, false and defamatory speech aimed at Petitioner: "[W]e have heard that Richard Baxter contacted KEJM Radio's Sunny Merriweather shortly before the meeting and asked her not to attend. Word is that Baxter met Merriweather outside the meeting room barring her from meeting, while she witnessed Potts shutting Heather Wright out." (Emphasis added.)
15.
Upon information and belief, John Doe # 2 on or about January 23, 2001, published the following malicious, false and defamatory speech aimed at Petitioner: *228 "Richard Baxter, a ULM Administrator, has now told the truth about the name change. We are shocked."
16.
Upon information and belief, John Doe # 3 on or about February 11, 2001, published the following malicious, false and defamatory speech aimed at Petitioner: "Baxter's words reveal more about what he did not say. Lawson Swearingen's Administration" working through The Ministry, have maintained that they were victims of campaign of lies and that they will not deign (sic) to refute specific charges. Now Baxter vehemently refutes a specific charge * * * "Baxter's response points out that often repeated vague charge of a `campaign of lies' is hogwash. If Baxter finds an inaccurate charge, he will counter it will (sic) all the indignation that he displayed in his letter to the editor. Maybe if the News Star had said, `Swearingen is unqualified, lazy, incompetent manager who is out to loot the University to build his political connections and prestige' Baxter would have replied, `he ain't lazy!"
17.
Upon information and belief, John Doe # 4 on or about March 5, 2001, published the following malicious, false and defamatory speech aimed at Petitioner: "In addition, the Morning Paper reported that some of the 41 community leaders (potential donors) who thought they were signing a declaration of support for ULM were tricked by Richard Baxter, Vice-President for External Affairs, into signing a declaration of support for Lawson Swearingen." The bamboozled may not make good donors.
18.
Upon information and belief, John Doe # 5 on or about May 9, 2001, published the following malicious, false and defamatory speech aimed at Petitioner:
* "Lawson Swearingen, ... has made such a mess that one of his sewer staff [referring to Baxter] has begun to crack under the strain."
* "Richard L. Baxter, Vice-President of External Affairs, has begun to crack."
* "Baxter's job is to make sure that Swearingen's incompetence and ULM's state of decline under Swearingen are kept undercover."
* "Baxter was last seen physically blocking KEDM radio's Sunny Merriweather from entering a meeting on health problems in Brown Hall. He reappeared in Ken Stickney's office to protest Evans story on the ballooning deficit in ULM's Athletic Department. Our sources report that Baxter was upset that the New Star had run Evan's story above the fold, and that the story had provided background on subjects such as the delinquent ASF loans. The confrontation heated up and Baxter began to add colorful expletives to his arguments. Among charges leveled at Stickney was that TruthAt ULM site is a joint effort ... Eventually Baxter was so distraught that he had to be escorted from the building."
* "And Baxter, who is the Vice-President of Excremental Affairs, has been shoveling so long that he is cracking under the strain."
19.
Upon information and belief, John Doe # 6 on or about June 8, 2001, published the following malicious, false and defamatory speech aimed at Petitioner:

*229 "Baxter dignified hi (sic) high office early in 2001 by physically barring reporter Sunny Merriweather from attending a meeting about the air quality of Brown Hall. Baxter suffered a rare moment of honesty at one point, admitting that alumni hated the University's name change. At another point in the year, Baxter parsed a litany of charges that Swearingen had misused scholarship funds, laughably objecting to only one. Late, Baxter cracked up in the News-Star offices. The Ministry of Public Affairs did manage to influence the more weak minded reporters at the News-Star to provide scant positive, but confused, coverage of the Faculty Senate Survey."
In response to the action against him, Scott filed the special motion to strike provided by La. C.C.P. art. 971. He filed three affidavits with attachments in support of his motion. In his memorandum in support of the motion, Scott argued that Baxter, as Vice President of External Affairs, was a public figure, that everything on the website involved matters of public concern, and that the burden of proof for purposes of the motion to strike was upon Baxter to establish a probability of prevailing on his claims. Scott argued that his affidavit showed that he had a reasonable belief in everything he said, and that if anything was in error, it was not for want of attempting to check facts. Scott also argued that he could not be held liable for hyperbole, such as referring to Baxter as the Vice President of Excremental Affairs, and likened his use of hyperbole to political cartoons.
Scott's affidavit essentially asserted that his goal in starting the website was to disseminate the truth on newsworthy matters, and that his goal later expanded to include stopping the damage done to ULM by Swearingen's mismanagement. Scott explained how he created the site. He asserted that he could not report on Swearingen's administration's attempts to hide or deflect the truth about ULM without discussing Baxter, whose responsibilities included public relations for the administration. Scott also asserted that much of the material on the website came from either articles in the News-Star or confidential sources. In his affidavit, Scott examined each part of Baxter's petition and explained why he posted the allegedly defamatory items. Scott explained that most of the statements about Baxter rehashed information published in other sources, and that other statements referencing Baxter were either statements of opinion or use of metaphor that cannot reasonably be taken as anything other than editorial hyperbole. Scott also asserted that many of the statements on the website have been verified by the legislative auditor, a crediting agency, and/or the report of James Fisher, a paid consultant to the ULM Board. According to Scott, none of the allegedly defamatory statements falls outside of one or more of these categories.
Scott also submitted the affidavit of John Hayes, the publisher of the Morning Paper in Ruston, Louisiana. Hayes' affidavit essentially claims that the information posted on the website was correct. Hayes gives an interesting account of the alleged activities at ULM, particularly with regard to financial difficulties. He also recounts the history of the website itself, the creation of which he links to the poor official explanations given at ULM about its financial woes.
Finally, Scott submitted the affidavit of Robert Eisenstadt, a professor of economics at ULM. In his affidavit, Eisenstadt recounts an incident within his personal knowledge concerning the difference between *230 what was occurring at ULM with respect to potential pay cuts and what was being reported to the media.
In opposition to the motion to strike, Baxter argued that Article 971 is inapplicable because Scott is not a member of the media. Baxter also argued that he had already demonstrated a probability of success on his defamation claim in his federal court action to determine the identity of the creator of the anonymous website. Baxter filed the favorable memorandum ruling by the federal magistrate as an exhibit to his affidavit. Baxter argued that the affidavits submitted by Scott were self-serving, unreliable, not relevant, and based on opinion rather than matters within the personal knowledge of the affiants. Moreover, Baxter asserted that Scott's own affidavit shows that the statements complained of were either false or meant to carry false and defamatory implications. Finally, Baxter argues that without benefit of discovery, he cannot verify the self-serving statements by Scott regarding his lack of malicious intent.
In his own affidavit, Baxter asserted that the statements about him on the website were false and malicious. He asserted that he had no ability to post replies to protect his reputation and good name. He claimed that his reputation and standing in the community were diminished and that he was questioned about the statements on the website during an employment interview at another university. Finally, he asserted his belief that the statements about him on the website adversely impacted his ability to secure career advancement and increased earnings. Baxter valued the damage to his reputation and earning capacity at $75,000.
The trial court heard arguments and then issued its ruling denying the motion to strike. The trial court stated in its ruling that the issue presented was whether Baxter could establish the elements necessary to support a defamation claim consistent with the dictates of Article 971. After setting forth the elements of a defamation claim, and after stating that the court had considered the pleadings as well as the supporting and opposing affidavits, the court concluded that Baxter had established a probability of success on his claim. Scott's writ application followed. The writ was granted, and the matter was docketed for review of the denial of the special motion to strike.

DISCUSSION
At issue is whether the trial court erred in denying the special motion to strike filed by Scott in response to Baxter's defamation action. La. C.C.P. art. 971 authorizes this motion and provides, in relevant part, as follows:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the proceeding, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.
* * *

*231 D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.
* * *
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
In Section 2 of Acts 1999, No. 734, Section 1 of which enacted Article 971, the legislature discussed its intent in enacting this provision as follows:
"Section 2. The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly."
As is evident from the legislature's expression of intent, Article 971 is a procedural device to be used in the early stages of litigation to screen those claims which lack merit and which would chill public participation in matters of public interest. Lee v. Pennington, XXXX-XXXX (La.App. 4th Cir.10/16/02), 830 So.2d 1037, writ denied, 2002-2790 (La.1/24/03), 836 So.2d 52; Stern v. Doe, XXXX-XXXX (La.App. 4th Cir.12/27/01), 806 So.2d 98.
In Thomas v. City of Monroe Louisiana, 36,526 (La.App.2d Cir.12/18/02), 833 So.2d 1282, this court noted that Article 971 is "virtually identical" to California's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, Section 425.16 of the California Code of Civil Procedure. Courts applying California's SLAPP statute have interpreted it as involving a two-part inquiry. Initially, the moving party must make a prima facie showing that the suit against him arises from an act in furtherance of his rights of petition or free speech. The burden then shifts to the plaintiff to demonstrate a probability that he will prevail on his claim. MCSI, Inc. v. Woods, 2003 WL 554638 (N.D.Cal.2003); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir.2003); Rivero v. American Federation of State, County, and Municipal Employees, 105 Cal.App.4th 913, 130 Cal.Rptr.2d 81 (1st Dist.2003). To establish a probability of *232 prevailing on his claim, a plaintiff must state and substantiate a legally sufficient claim. This is done through a prima facie showing of facts sufficient to sustain a favorable judgment. Rivero, supra. An independent review is conducted on appeal. Id.
In Thomas, supra, this court reviewed the granting of an Article 971 motion to strike filed by a television station in response to a defamation action by a city official pertaining to a news report. The court conducted a de novo review of the matter and affirmed the trial court's judgment granting the motion to strike. In its review, the court first determined that the plaintiff's claim involved a matter of public interest to which the special motion would apply. Then, the court examined whether the plaintiff would be able to overcome the motion by establishing a probability of success on his claim. The court implicitly recognized a dual burden of proof under Article 971. First, the moving party bears the burden of proving that the cause of action against him arises from actions in furtherance of his constitutional right of petition or free speech and in connection with a public issue, as defined by the statute. Second, once the moving party satisfies his initial burden, the burden of proof then shifts to the plaintiff to establish a probability of success on his claim of defamation. As stated in the statute, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" in deciding whether the motion is well-founded. La. C.C. art. 971(A)(2).
The two-part burden as utilized in Thomas, supra, satisfies the purpose and intent of the legislature in enacting Article 971. Once the plaintiff makes a prima facie case that the claim against him arises from the exercise of his rights of petition or free speech in connection with a public issue, the purpose behind Article 971 of encouraging continued public participation in matters of public significance by weeding out meritless lawsuits which would chill such participation is served by requiring the plaintiff to come forth with sufficient evidence to establish a probability of success on his claim. This allows the court to assess as a matter of law whether the plaintiff's lawsuit has merit or whether it is a means of chilling protected speech.

Scott's Burden of Proof
With these principles in mind, we now address the first inquiry under Article 971, which is whether Scott established that the claim against him arises from some act of his in furtherance of his right of free speech in connection with a public issue as defined by the article. Satisfaction of this burden does not require the defendant to point out deficiencies in the plaintiff's defamation claim or establish that there are no issues of fact as when a motion for summary judgment is made. Rather, the defendant must show that his actions involved the type of participation in matters of public interest which Article 971 is intended to protect.
Four examples of such activities are set forth in Part F(1) of Article 971. Scott's website and the written statements which are at issue appear to fall under at least two of the activities designated as acts in furtherance of a person's constitutional right of free speech in connection with a public issue. Scott's activities involved both writings made in a place open to the public and conduct in furtherance of the exercise of his right of free speech in connection with a public issue or issue of public interest. The statements at issue were written on a website open to the public. Broadly construing Article 971 as directed by the legislature, we believe that publishing statements relating to matters *233 of public interest on a website is an exercise of one's constitutional right of free speech. As indicated by Scott's affidavit as well as the affidavits of Hays and Eisenstadt, Scott's writings on the website involved matters of public interest, namely the operation of a public university and the conduct of its administrators in fulfilling their duties. All statements at issue appear directly related to these matters as they all discuss incidents involving Baxter in the performance of his duties as a university administrator or make reference to Baxter in his position as vice president of external affairs. The website clearly pertained to matters of public interest. Undoubtedly, the public has a great interest in how ULM, a public university that both receives public funding and contributes to the economy of the area in which it is located, is governed and whether it is having financial difficulties that are possibly being misrepresented to the public. The affidavits submitted by Scott in support of his motion show that the website and the statements posted thereon pertained to these matters of public interest.
We find that Scott has met his burden of proving that this suit arises from the exercise of his right of free speech in connection with a matter of public interest. Article 971 is applicable. We note Baxter's argument that Article 971 applies only to suits against the media. However, we reject this argument based on the plain language of Article 971, which places no such limitation but rather applies to causes of action against "a person."

Baxter's Burden of Proof
In order to overcome the special motion to strike, Baxter must establish a probability of success on his claim. This showing is based on the elements of the alleged tort claim. Lee v. Pennington, supra. Baxter has alleged the tort of defamation. Defamation involves the invasion of a person's interest in his reputation and good name. Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706, rehearing denied; Sasson v. Elder, 92-1856 (La.10/18/93), 626 So.2d 345; Thomas v. City of Monroe, supra. The plaintiff in a defamation action has the burden of proving the following four elements: (1) a false or defamatory statement; (2) unprivileged publication to a third party; (3) fault, negligence or greater, of the publisher; and (4) resulting injury. Fitzgerald v. Tucker, supra.
In opposition to Scott's motion, Baxter filed his own affidavit and a copy of a federal magistrate's opinion, which he claimed already established his probability of success on his claim against Scott. We note that the magistrate's opinion was not based on Article 971. In his affidavit, Baxter merely alleges that Scott's statements were false, defamatory, and malicious. We do not find that these uncorroborated conclusions suffice to meet the burden of establishing a probability of success on his defamation claim.
The record in this instance establishes that Baxter as the vice president of external affairs for ULM was a public official. This conclusion is supported by Davis v. Borskey, 94-2399 (La.9/5/95), 660 So.2d 17, at FN6, which found a purchasing agent at a state university to be a public official for purposes of a defamation action. Moreover, all of the statements alleged to be defamatory relate to public matters, as opposed to private matters, in that they all either relate incidents involving Baxter in his role as a university administrator or refer to Baxter in that role.
Speech on matters of public concern enjoys enhanced constitutional protection. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985); Romero *234 v. Thomson Newspapers (Wisconsin), Inc., 94-1105 (La.1/17/95), 648 So.2d 866, cert. denied, 515 U.S. 1131, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995). Another form of protected speech is hyperbole, which cannot reasonably be interpreted as stating actual fact. Greenbelt Cooperative Publishing, Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); Romero v. Thomson Newspapers (Wisconsin), Inc., supra. References to Baxter's administrative position as the "hatchet man," the "Vice-President of Excremental Affairs," or a member of the "sewer staff" could not reasonably be interpreted as stating an actual fact. References to Baxter "cracking up" would likewise be considered hyperbole as no one would consider him to be literally cracking up. While such comments are likely upsetting to the subject to which they refer, the Supreme Court has stated that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).
Other statements alleged by Baxter to be defamatory either relate incidents that allegedly occurred and which Baxter claims to be false or express an opinion. Even where a statement is false or is an expression of opinion that implies a false factual connotation, a public official must prove that the statement was made with actual malice in order to recover for defamation. Romero v. Thomson Newspapers (Wisconsin), Inc., supra, citing Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); New York Times Co. v. Sullivan, supra; and Bussie v. Lowenthal, 535 So.2d 378 (La. 1988).
Actual malice means that the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. New York Times Co. v. Sullivan, supra; Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552. To establish reckless disregard, the plaintiff must show that the false publication was made with a high degree of awareness of its probable falsity or that the defendant entertained serious doubts as to the truth of the publications. St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Davis v. Borskey, supra; Young v. Meyer, 527 So.2d 391 (La.App. 4th Cir.1988). Actual malice is not shown merely by evidence of ill will or "malice" in the ordinary sense of the word; nor is it to be inferred from evidence of personal spite, an intent to injure, or a bad motive. Harte-Hanks Communications, Inc. v. Daniel Connaughton, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Tarpley v. Colfax Chronicle, 94-2919 (La.2/17/95), 650 So.2d 738.
Upon thoroughly reviewing the submissions by the plaintiff in opposition to the motion to strike, we find that Baxter did not meet the burden of establishing a probability of success on his claim of defamation, particularly as to satisfying the element of fault requiring proof of actual malice. Other than Baxter's own attestations in his affidavit that the alleged defamatory statements were malicious, Baxter produced nothing to establish a prima facie showing of malice.[1] Baxter argues *235 that malice is shown because the statements and references on the website portrayed him in a negative light. This is not sufficient to show knowledge of falsity or reckless disregard for the truth as required to prove malice. In contrast, Scott addressed each alleged defamatory statement in his own affidavit to show that he had a reasonable belief in the truth of what he was publishing and that his writings included opinion and hyperbole.
While we realize that requiring Baxter to come forward at this early stage of litigation with sufficient evidence to establish a probability of success on his claim is a difficult burden, the necessity of protecting our constitutional rights of free speech and petition, particularly when exercised in relation to public issues or matters of public interest, requires the imposition of this burden on a plaintiff who brings a defamation action impacting these rights. Corroborating evidence, such as affidavits from persons who witnessed some of the allegedly false events reported on the website, may have been sufficient for Baxter to establish a probability of success on his defamation claim. However, no corroborating evidence was offered. On the record before us, we must conclude that Baxter failed to show a probability of success on his claim and that the trial court erred in denying Scott's motion to strike.

CONCLUSION
The judgment of the trial court denying the special motion to strike is reversed for the reasons stated in this opinion. The motion to strike is hereby granted, and Baxter's action is dismissed with prejudice. Costs are assessed to Baxter.
REVERSED.
Before WILLIAMS, STEWART, GASKINS, PEATROSS, and DREW, JJ.
PER CURIAM.
On May 16, 2003, this court rendered an opinion in the above entitled writ matter. We reversed the trial court's denial of a special motion to strike filed by John L. Scott pursuant to La. C.C.P. art. 971 against Richard L. Baxter's petition alleging defamation. We granted the motion to strike, dismissed Baxter's action with prejudice, and assessed costs to him.
On May 28, 2003, Judge Stewart signed an order denying a joint motion to dismiss that had been filed on behalf of Baxter and Scott on May 5, 2003, just prior to the opinion being rendered.
Thereafter, on May 30, 2002, Baxter filed a "Motion To Traverse or Alternatively, Application For Rehearing By Richard L. Baxter." Baxter asserts that the opinion of this court was moot when rendered on May 16, 2003, because this court had been informed by way of the joint motion to dismiss that the parties had amicably resolved their differences. Baxter further asserts that the opinion is nothing more than an advisory opinion since this court was aware that the parties had settled their differences. In his prayer for relief, Baxter asks either that the ruling be traversed or rehearing be granted in accordance with Rule 2-18.7 of the Uniform Rules-Courts of Appeal ("U.R.C.A."). He further asks that the opinion be recalled and the writ matter dismissed as moot.
Baxter bases his arguments on the fact that a joint motion to dismiss was filed prior to the opinion being rendered. Although this matter involves a writ rather than an appeal, the uniform rules applicable to appeals apply as provided by *236 U.R.C.A. 4-8, insofar as such rules do not conflict with rules specifically pertaining to writs.
La. C.C.P. art. 2162 provides that "(a)n appeal can be dismissed at any time by consent of all parties." Joint motions to dismiss are specifically addressed in Rule 2-8.3 of the U.R.C.A., which provides as follows:
Any appeal may be summarily dismissed or remanded by order of the court where there has been a joint motion filed by all interested parties or their counsel of record, which shall set forth the reason for such action and which shall be supported by appropriate affidavits that the facts alleged are true and correct. (Emphasis added.)
A review of the motion to dismiss shows that the parties failed to comply with the requirement of U.R.C.A. 2-8.3 in that their motion was not supported by appropriate affidavits attesting to the truthfulness of the facts regarding their settlement and desire for dismissal. No affidavits were filed in conjunction with the motion to dismiss. The motion to dismiss was procedurally defective and provided no basis for dismissal of the appeal prior to rendition of the opinion. Nor does the defective motion to dismiss provide any basis for the recall of the opinion and dismissal as prayed for by Baxter in the motion now before this court. Accordingly, Baxter's Motion to Traverse/Application for Rehearing is denied.
MOTION AND REHEARING DENIED.
NOTES
[1] In his appellate brief, Baxter refers to discovery conducted after the denial of the motion to strike by the trial court. He claims this discovery bolsters his defamation claim. Discovery was stayed as of the time of the filing of the notice of the motion to strike by Scott, as provided for in La. C.C.P. art. 971(D). As per this same provision, Baxter could have sought an order for specified discovery to be conducted prior to the trial court's ruling on the motion. However, he did not pursue this relief. We cannot consider Baxter's arguments regarding subsequent discovery in reviewing this motion.