| | | |
|---|---|---|
| **LATOYA W. CANTRELL** | * | **NO. 2024-CA-0716** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **ANNE W. BREAUD** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |
| | * | |
| | * | |

\* \* \* \* \* \* \*

**LOBRANO, J. DISSENTS WITH REASONS**

I respectfully dissent. This case presents a serious and developing question in Louisiana law as to whether a verified petition for protection from stalking under La. R.S. 46:2171 *et seq.*, alleging conduct that may constitute a crime, can be summarily dismissed under La. C.C.P. art. 971, Louisiana's anti-SLAPP statute, which was enacted to prevent retaliatory lawsuits aimed at chilling constitutionally protected speech. The majority concludes that Article 971 applies in the case *sub judice*. I respectfully disagree. Article 971's application to protective order proceedings, particularly those involving stalking, raises new and pressing concerns, especially in light of increased threats and targeted harassment against public officials.[1]

Article 971 was designed to protect against the misuse of civil litigation to punish or suppress protected expression. *Alexander v. Times-Picayune L.L.C*, 16-1134, p. 3 (La. App. 4 Cir. 5/31/17), 221 So.3d 198, 201 (noting that the purpose of Article 971 is "to screen out meritless claims pursued to chill one's

---

[1] *See*, *e.g.,* John G. Roberts, Jr., 2024 Year End Report on the Federal Judiciary 15 (Dec. 31, 2024) ("According to United States Marshals Service statistics, the volume of hostile threats and communications directed at judges has more than tripled over the past decade. In the past five years alone, the Marshals report that they have investigated more than 1,000 serious threats against federal judges."), and PBS News, *Why political violence and violent threats are on the rise in the United States* (July 14, 2014), https://www.pbs.org/newshour/show/why-political-violence-and-violent-threats-are-on-the-rise-in-the-united-states.

1

constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press"). *See also Terrell v. Derouen*, 21-1327, p. 2 (La. App. 1 Cir. 7/5/22), 345 So.3d 1065, 1067 n. 1 (noting that Article 971 "applies in a very specific situation: when a litigant has brought a cause of action, typically alleging defamation, in an effort to chill the First Amendment speech of its target").

Article 971 creates a two-step burden-shifting framework. First, the defendant must make a prima facie showing that the petitioner's claim arises from an act in furtherance of the defendant's right of petition or free speech in connection with a public issue. *Jones v. St. Augustine High Sch., Inc.*, 21-0474, p. 8 (La. App. 4 Cir. 2/16/22), 336 So.3d 470, 476-77 (citing *Melius v. Keiffer*, 07-0189, p. 3 (La. App. 4 Cir. 3/12/08), 980 So.2d 167, 171). If that burden is met, the burden shifts to the petitioner to demonstrate a "probability of success" on the claim. *Id.*, 21-0474, p. 8, 336 So.3d at 477.

Our Court has not explicitly addressed whether courts may resolve factual disputes or assess witness credibility when determining if a petitioner has met the burden of establishing a "probability of success" under Article 971.[2] However, persuasive authority from the Louisiana Second Circuit and the Louisiana federal courts explains that such credibility determinations are inappropriate at this stage. In *Bradford v. Judson*, 44,092, p. 15 (La. App. 2 Cir. 5/6/09), 12 So.3d 974, 983, the Second Circuit treated the Article 971 "probability of success" standard as functionally equivalent to summary judgment under Louisiana law and rejected the notion that either standard permits the court to weigh credibility. *See also*,

---

[2] Louisiana courts have recognized that factual disputes cannot be resolved in preliminary proceedings where credibility is at issue. *See Gurvich v. New Orleans Private Patrol Service, Inc.*, 578 So.2d 195, 198-99 (La. App. 4 Cir. 1991) (reversing trial court's issuance of mandatory preliminary injunction where conflicting affidavits created material factual disputes that could not be resolved without further evidence). This principle supports the conclusion that Article 971, like preliminary injunction proceedings under La. C.C.P. art. 3601 *et seq.*, does not authorize dismissal where material facts remain in dispute and credibility must be assessed through an evidentiary hearing with testimony.

Catherine Palo, 22 La. Civ. L. Treatise, Summary Judgment & Related Termination Motions § 3:19 (2025 ed.).

The federal courts interpreting Article 971 similarly recognize that the "probability of success" standard does not authorize courts to resolve factual disputes. *See Lozovyy v. Kurtz*, 813 F.3d 576, 586 (5th Cir. 2015) (noting that the "probability of success" standard "does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact"); *Block v. Tanenhaus*, 867 F.3d 585, 590 (5th Cir. 2017) (citing *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (holding that the non-movant's burden in opposing an Article 971 motion is the same as that under Rule 56 in opposing summary judgment).[3]

I find that Article 971 does not permit summary dismissal when genuine disputes of material fact exist or when credibility is at issue. Protective order petitions, particularly those involving allegations of stalking or emotional distress, almost invariably raise factual disputes and credibility determinations that cannot be resolved on the face of the pleadings or affidavits alone.

The petition filed by Mayor Cantrell under La. R.S. 46:2171 *et seq.* is not a defamation claim usually involved in anti-SLAPP motions. It does not seek to suppress speech, nor does it allege harm arising from public commentary or expression. Rather, it invokes the protections of Louisiana's stalking statute, La. R.S. 14:40.2(A), which defines stalking as:

---

[3] These federal decisions rely on California's anti-SLAPP jurisprudence, which interprets a virtually identical statute. As recognized by Louisiana courts, including the Second Circuit in *Baxter v. Scott*, 37,092, pp. 8-9 (La. App. 2 Cir. 5/16/03), 847 So.2d 225, 231-32, *vacated as moot*, 03-2013 (La. 11/14/03), 860 So.2d 535, California's anti-SLAPP law provides persuasive guidance in interpreting Article 971. California courts consistently hold that a petitioner need only make a prima facie showing of facts to sustain a favorable judgment, and that motions to strike should not be granted where material fact issues exist or credibility is at issue. *See D'Arrigo Bros. of Cal. v. United Farmworkers*, 224 Cal.App.4th 790, 800, 169 Cal.Rptr.3d 171, 178 (6th Dist. 2014); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 155, 162 Cal.Rptr.3d 831, 841 (2d Dist. 2013). As noted in *Shelton v. Pavon*, 17-0482, p. 7 (La. 10/18/17), 236 So.3d 1233, 1245 (Weimer, J., dissenting), the Louisiana and California statutes are textually identical. Accordingly, the prevailing interpretation of Anti-SLAPP statutes does not authorize resolution of factual disputes or the weighing of credibility, especially where the petition implicates claims of stalking and safety-based protection.

> [T]he intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act…

Stalking is not protected speech. It is a pattern of conduct, and its legal significance depends on context, intent, and effect and not on content. The appropriate legal standard of stalking is objective and requires an inquiry into whether the conduct would cause a reasonable person to feel fear or distress.

Mayor Cantrell's verified petition alleges precisely the type of conduct contemplated by the stalking statute, including the creation and dissemination of over 800 hours of video, photographing and filming at locations she frequents, and behavior that she alleges caused emotional distress and exposed her and her family to public risk.[4] These are not conclusory allegations, nor are they grounded in the suppression of public discourse. If proven, they may warrant both civil protective relief and criminal liability. To permit dismissal of such claims under Article 971 before discovery, without testimony, and based solely on affidavits extends the anti-SLAPP statute beyond its intended procedural and constitutional bounds.

Although both anti-SLAPP protections and protective order statutes are designed to prevent abuse of the legal process, Louisiana's protective order

---

[4] While Breaud's affidavit denies most of the conduct alleged by Mayor Cantrell, asserting no following, no communication, and only two photographs taken from her own balcony, those denials squarely contradict the Mayor's sworn petition. The verified petition alleges a sustained pattern of fear-inducing conduct. This conflict in sworn accounts raises genuine factual disputes and credibility determinations that cannot be resolved through affidavits alone. *See Bradford v. Judson*, 44,028, p. 15, *Gurvich,* 578 So.2d at 198-99. By granting the motion to strike without an evidentiary hearing, the district court and now the majority implicitly accept Breaud's version of events as true and disregard the Mayor's verified allegations. This inference, made without discovery or testimony, exceeds the procedural scope of Article 971. *See Lozovyy*, 813 F.3d at 586. Moreover, even assuming Breaud's factual denials are true, she does not rebut the effect of her actions, that is the fear, intimidation, and emotional distress alleged by Mayor Cantrell based on an objective standard, which is central to the legal definition of stalking and remains legally unaddressed.

framework, particularly in cases involving stalking, operates under a distinct, expedited set of procedures that provides additional safeguards against retaliatory or frivolous claims. *See* La. R.S. 46:2135(A)–(B). La. C.C.P. art. 3608 allows a defendant to recover damages and attorney's fees for the wrongful issuance of a temporary restraining order or preliminary injunction. If the allegations in a protective order petition are knowingly false, the petitioner may face serious criminal penalties.[5] The protective order petition form itself includes an acknowledgment warning petitioners of these consequences. Protective order provisions render the procedural shortcut and attorney fee provisions of Article 971 unnecessary and inappropriate in this context, particularly because the petition alleges conduct that may constitute a crime. Courts should rely on these direct statutory remedies rather than extend Article 971 beyond its intended function to dismiss serious allegations before a factual record is developed.

Moreover, the majority's suggestion that Mayor Cantrell's presence in a public setting negates her claim fundamentally misapprehends the law. La. R.S. 14:40.2 explicitly recognizes that stalking often occurs in public. Repeated, unwanted, and fear-inducing presence even on a public sidewalk, in a restaurant, or outside a home can satisfy the elements of the offense. Public officials do not waive their right to safety and dignity by appearing in public. The proper inquiry is not where the conduct occurred, but whether it occurred and was it repeated, targeted, and would cause a reasonable person fear or distress. That fact-sensitive determination should not be made on a motion to strike.

---

[5] Filing a false sworn statement in such a proceeding may constitute perjury under La. R.S. 14:123, or filing false public records under La. R.S. 14:133, and the penalty for committing these offenses is severe. *See* La. R.S. 14:123(C)(4) ("Whoever commits the crime of perjury shall be punished as follows: When committed in any civil action . . . or in any other legal proceeding, by a fine of not more than ten thousand dollars or imprisonment at hard labor for not more than five years, or both."); *see also* La. R.S. 14:133(C)(1) ("Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.").

The procedural mechanisms afforded by Article 971 are significant but they must be applied with caution. When serious allegations implicating criminal conduct and public safety are raised, courts must address such allegations through full evidentiary hearings and legal process, and not resolve such allegations at the pleadings stage on affidavits alone. To apply Article 971 in this context circumvents the procedural framework expressly established for protective order proceedings, thereby denying the parties a meaningful opportunity to be heard and depriving the public of the transparency and a factual record required for proper adjudication. Where issues of safety, reputation, and public accountability are at stake, the truth must be developed through a full and fair evidentiary record. Such a fact-finding process ensures that any appellate review is grounded in a complete factual context, allowing for meaningful and accurate review.

I would reverse the district court's rulings and remand the matter for a full evidentiary hearing on the merits of Mayor Cantrell's petition. Such a proceeding is necessary not only to ensure procedural fairness and adherence to the statutory framework governing protective orders, but also to preserve the integrity of Louisiana's protective order system and to reaffirm the limited, carefully defined purpose of its anti-SLAPP statute.